712 P.2d 638

**EAST SHOSHONE HOSPITAL DISTRICT, a municipal corporation, organized under the laws of the State of Idaho, Plaintiff-Respondent,**

v.

**Irene NONINI, Clerk, Frederick W. Cantamessa, George Gieser, and Bill Noyen, County Commissioners of Shoshone County, Idaho, Defendants-Appellants.**

No. 15394.

Supreme Court of Idaho.

Dec. 31, 1985.

John O. Cossel, Wallace, for defendants-appellants.

Piatt H. Hull, Wallace, for plaintiff-respondent.

BISTLINE, Justice.

HISTORY

Today's case adds a new chapter to the confusion that abounds in Idaho's medical indigency acts. Only a complete redrafting of these acts will ever satisfactorily clear up the numerous ambiguities and inconsistencies which the acts have created. *See Intermountain Health Care, Inc. v. Board of County Commissioners,* 109 Idaho 299, 707 P.2d 410, 412 (1985) (hereinafter cited as *Intermountain Health 1985* ); *Intermountain Health Care, Inc. v. Board of County Commissioners,* 107 Idaho 248, 254–55, 688 P.2d 260, 266 (Ct.

App.1984) (hereinafter cited as *Intermountain Health 1984*); *University of Utah Hospital v. Bethke*, 98 Idaho 876, 879, 574 P.2d 1354, 1357 (1978). Until that millenial day, however, we are obligated to give meaning to the act in a rational and reasonable manner, a not altogether easy task. *See Intermountain Health 1985, supra,* at 412.

The parties to this suit have stipulated to the facts of this case. In capsulated form, they state the following: Mary Beth Jensen was seriously injured in an automobile accident on I-90 in Shoshone County. She was not a resident of the county at the time of the accident nor did she subsequently become such a resident.

Jensen was taken to East Shoshone Hospital, a publicly owned and operated hospital for emergency treatment. As a result of her injuries, Jensen subsequently was hospitalized for one month.

East Shoshone Hospital determined that Jensen was medically indigent and applied for county aid. That application was denied by the Shoshone County Commissioners for the stated reason that "Shoshone County is not the obligated county." The hospital appealed to the district court, which reversed the county.

The issue on appeal to this Court was framed to the district court in the following manner:

Is [Shoshone] County relieved of its financial obligations under Chapters 34 and 35, Title 31, Idaho Code to a medically indigent person injured while within the territorial limits of the County because such person was not a resident of Shoshone County or the State of Idaho,[1] when the injuries were suffered and did not subsequently become such a resident.

The district court, in an exhaustive and thorough opinion, traced the history of Idaho's various medical indigency acts and

concluded that I.C. § 31–3404 obligates Shoshone County to pay for Jensen's care. We wholly agree. On the county's appeal to this Court our decision affirming is largely a reiteration of that opinion.

## I.

The first time Idaho attempted to care for the medically indigent was in 1864 when it still was a territory. The legislation, contained in the Second Session of the Idaho Territorial Session Laws, pp. 424–26, granted taxing powers to the counties in order to care for indigent people needing medical care within the counties. Nothing was said concerning residency, however, and nothing was written which required the counties to help the poor.

In 1870, the territorial legislature amended the 1864 act. *See* Sixth Session of the Territorial Session Laws, pp. 39–40. The 1870 act provided a procedure by which "sick persons desiring aid from any County of this Territory" may receive such aid. Again, no mention of residency was made.

Not until 1885 was the above legislation again modified. *See* Thirteenth Session of the Territorial Session Laws, pp. 127–28. The changes were minimal. The act stated that a person seeking assistance must now submit a proper application in the precinct where the person resides. No residency requirement was added. In 1887 the above laws were codified into the Revised Statutes § 2170 *et seq.* (1887).

This Court had its first occasion to interpret all of this legislation in *Board of County Commissioners of Logan County v. McFall*, 4 Idaho 71, 35 P. 691 (1894), where the Court had to determine, as we do today, whether a non-Idaho resident was entitled to receive care from Logan County, Idaho. The Court answered in the affirmative.

---

**1.** The parties to this case have never formally stipulated to the fact that Jensen was not a resident of the State of Idaho. In their joint motion for declaratory judgment to the district court, however, they stated the following: "[S]hould additional factual issues develop during the consideration of the legal issues present-

ed herein, the parties desire to stipulate to such additional facts...." In their subsequent arguments before the district court and before this Court, both parties have presented their positions with the assumption that Jensen is not an Idaho resident. We view this to be a *de facto* stipulation and shall treat it accordingly.

The facts of *McFall* are simply stated. Charles Stansbury, a resident of the State of Washington, became seriously sick in Idaho and sought medical help. McFall, who had a contract with Logan County to care for the indigent sick within the county, took Stansbury in and cared for him. McFall subsequently took the bill for the care of Stansbury to the Logan County Commissioners for payment. The Commissioners denied it, saying that the county was not obligated to care for non-resident patients. McFall appealed to the trial court, which affirmed the county's decision.

This Court reversed, however, stating: The statute under consideration is one of mercy and benevolence, and must be liberally construed, with a view to carry into effect its beneficent objects and designs. We think the provisions of said chapter are broad enough to include all indigent sick within a county. The statute does not require that such persons reside within the county any certain length of time, or that they possess any particular qualification, other than that of being indigent sick or otherwise dependent poor. A citizen of another state who comes into this state, and becomes sick, and is pecuniarily unable to provide for himself proper medical aid, attendance, and support while so sick, comes within the provisions of said chapter. *Id.* at 74, 35 P. at 691–92.

Not until 1935—over forty years later—did the legislature amend this legislation. The legislature added the following words relating to application for county aid to the old § 30–2904, a recodified section from the 1887 codification:

[E]xcept in the case of emergency or extreme necessity no person shall receive the benefit of this Chapter who shall not have been a resident of the State of Idaho for at least one year and of the county at least six months next preceding the application for county aid. 1935 Idaho Sess.Laws, ch. 15, p. 34.

Thus, for the first time was residency made a requirement to receive medical aid, *but only in cases involving non-emergency care.*

In 1967 the legislature modified the old § 30–2904—which again had been recodified as I.C. § 31–3404—to require that an applicant show that there was no available work which he or she was capable of doing as a prerequisite to receiving county assistance. 1967 Idaho Sess.Laws, ch. 27, p. 47. Nothing, however, was changed with respect to residency requirements.

In 1974 the legislature made significant changes to its medical indigency acts. The legislature totally repealed Chapter 35 of Title 31, and enacted a new Chapter 35, and also made numerous changes to Chapter 34.[2] 1974 Idaho Sess.Laws, ch. 302, pp. 1769–81.

With respect to Chapter 34, most of the legislature's changes involved updating language, such as replacing the term "poor farm" with "county hospital." Section 31–3404's residency requirement, however, was not changed substantively, except in one instance where the legislature used "medically indigent person" terminology so that Idaho's residency requirement then read as follows:

[E]xcept in the case of a medically indigent person, emergency or extreme necessity no person shall receive the benefit of this chapter who shall not have been a resident of the state of Idaho for at least one (1) year and of the county at least six (6) months next preceding the application for county aid. 1974 Idaho Sess.Laws, ch. 301, p. 1772 (underlining indicates material added).

The 1974 amendments also changed I.C. § 31–3407. In 1957, § 31–3407 had been amended to designate the county liable for the emergency services of a non-resident indigent. It stated then in pertinent part:

Services rendered in an emergency are defined as those reasonably necessary to

**2.** The legislature had divided its treatment of medical indigency care into two chapters of Title 31: Chapter 34, which deals with "Indigent Persons," and Chapter 35, which deals with "Hospitals for Indigent Sick."

alleviate illness or injury which if untreated is apt to maim or cause death. Such services shall be paid for by the county of residence of the indigent sick and, *if not a resident of Idaho, by the county wherein the indigent sick became ill or was injured.* 1957 Idaho Sess.Laws, ch. 168, p. 304 (emphasis added).

The 1974 amendments altered § 31–3407 to state the following:

Except as provided in [the new] section 31–3506, Idaho Code, ~~Such~~ such services shall be paid for by the county of residence of the ~~indigent~~ sick or otherwise indigent person and, if not a resident of Idaho, by the county where the ~~indigent~~ sick or otherwise indigent person became ill or was injured. 1974 Idaho Sess. Laws, ch. 302, p. 1774 (underlining indicates material added; overstriking indicates material deleted; bold emphasis added).

Thus, as of 1974, both I.C. §§ 31–3404 and 31–3407 were clear in providing for the emergency care of non-resident indigents.

The amended § 31–3407 referred to I.C. § 31–3506. This section in 1974 provided the following in pertinent part:

**31–3506. DETERMINATION OF OBLIGATED COUNTY.**—Payment for *hospitalization of a medically indigent individual shall be provided by the county in which such individual last resided for a period of six (6) months during the five (5) years preceding hospitalization. If such individual has not resided in any county of Idaho for a period of six (6) months within the five (5) years preceding hospitalization, then the county where the individual maintains a residence immediately preceding hospitalization shall be the obligated county.* If the individual does not reside in any county in Idaho at the time, then the county where the hospital rendering services is located shall be the obligated county, except that in the case of automobile accidents involving nonresident individuals traveling in the state, the county wherein the accident occurred

shall be the obligated county. 1974 Idaho Sess.Laws, ch. 302, p. 1777–78 (emphasis added).

In 1976 the legislature made substantial revisions to the 1974 amendments—particularly those involving residency requirements. 1976 Idaho Sess.Laws, ch. 121, pp. 462–69. With respect to I.C. § 31–3404, the only change relating to residency was the deletion of "medically indigent person." Thus, the "except in the case" portion of that section now stood to read exactly as it had first appeared in 1935. 1976 Idaho Sess.Laws, ch. 121, p. 463.

With respect to I.C. § 31–3407, the following changes were made:

Services rendered in an emergency are defined as those reasonably necessary to alleviate illness or injury which if untreated is likely to cause death or serious disability. Such services shall be paid for by the county of residence of the sick or otherwise indigent person ~~and, if not a resident of Idaho, by the county where the sick or otherwise indigent person became ill or was injured~~. 1976 Idaho Sess. Laws, ch. 121, pp. 465–66 (underlining indicates material added in 1976; overstriking indicates material deleted in 1976).

With respect to I.C. § 31–3506, the following changes were made:

Payment for hospitalization of a medically indigent individual shall be provided by the county in which such individual ~~last resided for a period of six (6) months during the five (5) years~~ maintained a residence immediately preceding hospitalization or institutionalization. If such individual has not resided in any county of Idaho for a period of six (6) months within the five (5) years preceding hospitalization, then the county where the individual maintains a residence immediately preceding hospitalization shall be the obligated county. ~~If the individual does not reside in any county in Idaho at the time, then the county where the hospital rendering services is located shall be the obligated county, except that in the case of automobile accidents involving nonres-~~

~~ident individuals traveling in the state, the county wherein the accident occurred shall be the obligated county.~~ 1976 Idaho Sess.Laws, ch. 121, p. 468 (underlining indicates material added in 1976; overstriking indicates material deleted in 1976).

The title to Chapter 121 reveals the intent of the legislature in amending § 31–3506. It states that the intent of the chapter, in part, is to amend I.C. § 31–3506 "to strike provisions obligating the county wherein the hospital is located if the person is not residing in any county in Idaho." The title fails to note that it also deleted the provision in § 31–3506 obligating the county to care for non-resident indigents who are involved in automobile accidents.

Thus, as of 1976 and to the present, I.C. § 31–3404 has provided in pertinent part: *"[E]xcept in the case of an emergency or extreme necessity* no person shall receive the benefit of this chapter who shall not have been a resident of the state of Idaho for at least one (1) year and of the county at least six (6) months next preceding the application for county aid." (Emphasis added.) Also since 1976, I.C. §§ 31–3407 and 31–3506 have stated nothing on the matter. It is clear, however, that the legislature explicitly deleted provisions nearly identical to § 31–3404 in §§ 31–3407 and 31–3506. Nevertheless, in light of the above legal history, and applying statutory rules of construction, we hold that Shoshone County is liable for the *emergency* medical costs incurred by Jensen. Our reasons follow.

## II.

Where a statute is clear and unambiguous, the expressed intent of the legislature must be given effect. *State Department of Law Enforcement v. One 1955 Willys Jeep,* 100 Idaho 150, 153, 595 P.2d 299, 302 (1979); *Worley Highway Dist. v. Kootenai County,* 98 Idaho 925, 928, 576 P.2d 206, 209 (1978). It is further the rule that "[t]his Court is required to give effect to every word, clause and sentence of a statute, where possible...." *University of Utah Hospital v. Bethke,* 101 Idaho 245, 248, 611 P.2d 1030, 1033 (1980); *see also Umphrey v. Sprinkel,* 106 Idaho 700, 706, 682 P.2d 1247, 1253 (1983); *Norton v. Department of Employment,* 94 Idaho 924, 928, 500 P.2d 825, 829 (1972) ("[A] statute should be construed so that effect is given to all its provisions, so that no part thereof will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another. 2 J. Sutherland, *Statutory Construction* § 4705 (3d ed. F. Horack 1943)....").

■ The words of I.C. § 31–3404 are clear. We cannot ignore them; the legislature could have, *but did not,* delete them. They are in force, and must be given effect, and they provide that recipients of aid must be Idaho residents *"except in cases of emergency or extreme necessity."* Thus, we hold that Shoshone County is not relieved of its financial obligations under Chapters 34 and 35 of Title 31, Idaho Code to care for Jensen. To summarize, we note the following: Jensen is indigent; she was seriously injured and needed emergency treatment; I.C. § 31–3404 indicates that indigents needing emergency care need not be residents of this state; no other section makes residency a requirement.

Our holding is buttressed by I.C. § 31–3501, which states the policy of Idaho with respect to the care of medically indigent people:

31–3501. **Declaration of policy.**—In order to safeguard the public health, safety and welfare, and to provide suitable facilities and provisions for the care and hospitalization of *persons* in this state, and, in the case of *indigent persons,* to provide for the payment thereof, the respective counties of this state shall have the duties and powers as hereinafter provided. (Emphasis added.)

The policy of the state, in part, is to care for, and provide for the payment of behalf of, *indigent persons.* Our holding today fulfills that obligation. To rule otherwise would not do so, and would also require us to ignore I.C. § 31–3404—something we are unable and unwilling to do.

### III.

The hospital requests attorney's fees. It argues that the county has defended this suit frivolously and without foundation. We disagree. Unless otherwise provided for by statute or by contract, "attorney fees will only be awarded when this court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation." *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979).

Idaho's medical indigency acts are possessed of some of the most "inartful draftsmanship" on the books. *University of Utah, supra,* 98 Idaho at 879, 574 P.2d at 1357. Very little within the statutes is clear. Therefore, we hold that the county was well-justified in pursuing this appeal. *Cf. Intermountain Health 1984, supra,* 107 Idaho at 254–55, 688 P.2d at 266–67. Accordingly, we deny the hospital's request for attorney's fees.

### IV.

We end where this Court began 90 years ago: "The statute under consideration is one of mercy and benevolence, and must be liberally construed, with a view to carry into effect its beneficent objects and designs." *McFall, supra,* 4 Idaho at 74, 35 P. at 691–92. Today's decision is in harmony with that statement, and we reaffirm our view of the purpose of Idaho's medical indigency acts. No attorney's fees; costs to respondent.

DONALDSON, C.J., and BAKES and HUNTLEY, JJ., concur.

SHEPARD, J., dissents without opinion.