# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 36705-2009

| | | |
|---|---|---|
| GEORGE KELLEY and JOANN KELLEY, husband and wife, | ) ) ) | Boise, December 2010 Term |
| Plaintiffs-Respondents, | ) ) | 2011 Opinion No. 10 |
| v. | ) ) | Filed: February 2, 2011 |
| WARREN YADON, | ) ) | Stephen W. Kenyon, Clerk |
| Defendant-Appellant, | ) ) ) | |
| and | ) ) | |
| KIM YADON, | ) ) ) | |
| Defendant-Respondent. | ) ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, in and for Cassia County. The Hon. Michael R. Crabtree, District Judge.

The judgment of the district court is affirmed.

Nelson, Hall, Parry Tucker, P.A., Idaho Falls, for appellant. Sam L. Angell argued.

Parsons, Smith and Stone, LLP, Burley, for respondents George and Joann Kelley. William A. Parsons argued.

Tuft Law Office, P.A., Burley, for respondent Kim Yadon.

---

EISMANN, Chief Justice.

This is an appeal from a judgment holding that the Plaintiffs are beneficiaries of a resulting trust in land titled in the names of the Defendants. We affirm the judgment.

# I. FACTS AND PROCEDURAL HISTORY

In the late 1990's, George and Joann Kelley wanted to purchase a 670-acre farm, but they had neither the cash nor the credit to do so. They persuaded a friend to purchase the farm, and then they, their nephew, and one of their daughters entered into a lease of the property with an option to purchase it.

As the expiration of the lease and option to purchase was drawing near in 1992, the Kelleys still wanted to purchase the property, but were still financially unable to do so. George Kelley and his daughter Kim Yadon orally agreed that she and her husband, Warren Yadon, would purchase the farm in their names; that the Kelleys would make the payments on the Yadons' loans and would pay the real estate taxes and farming expenses; that the Kelleys would operate and improve the farm; and that when the Yadons' loans were paid in full they would deed the farm to the Kelleys. Kim told Warren the details and terms of the agreement, and he agreed to them.

George Kelley arranged a series of transactions to acquire the farm. On March 4, 1992, the Kelleys assigned their option to purchase to the Yadons, and they assigned the option to another friend of the Kelleys, who purchased the Farm. The Yadons then purchased a one-half interest in the property with borrowed money. In 1994, the Yadons obtained another loan to purchase the remaining one-half interest in the farm. As of August 4, 1994, the Yadons held sole legal title to the farm.

George Kelley continued operating the farm and making the payments. Occasionally, he was late with a payment, causing the Yadons to make a payment with their own line of credit. When they did, the Kelleys reimbursed them in full for those payments.

In 2004 or 2005, Kim Yadon told her father that they needed to get title to the farm out of the Yadons' names because they were having marital difficulties. George Kelley and the Yadons met to discuss how that could be accomplished, but they did not reach an agreement. Warren Yadon filed for divorce in May 2008.

On August 25, 2008, the Kelleys filed this action and recorded a lis pendens. Warren Yadon responded by serving the Kelleys with a notice of eviction from the farm. He also filed counterclaims for unlawful detainer and slander of title and sought a temporary restraining order and preliminary injunction to keep the Kelleys from planting crops on and possessing the farm.

The Kelleys filed a motion to dismiss the counterclaims on the ground that Kim Yadon was an indispensable party to those claims. The court ordered that she be joined as a party in the action.

The case was tried to the district court on March 30 and April 1, 2009. Based upon the evidence, the court imposed a resulting trust on the farm in favor of the Kelleys. It also denied Warren Yadon recovery on his claims for eviction and slander of title.

The Kelleys and Kim Yadon each filed a memorandum of costs seeking court costs, including attorney fees, against Warren Yadon. He did not object to the claimed costs, and the district court awarded the Kelleys $26,032.81, and it awarded Kim Yadon $8,772.50. Warren Yadon timely appealed.

## II. ISSUES ON APPEAL

A. Did the district court err in finding a resulting trust in favor of the Kelleys?

B. Did the district court err in denying Warren Yadon's claim for eviction?

C. Did the district court err in awarding attorney fees to the Kelleys?

D. Is any party entitled to an award of attorney fees on appeal?

## III. ANALYSIS

### A. Did the District Court Err in Finding a Resulting Trust in Favor of the Kelleys?

Citing *Hettinga v. Sybrandy*, 126 Idaho 467, 886 P.2d 772 (1994), Warren Yadon contends that the evidence was insufficient to support the district court's finding of a resulting trust. In *Hettinga*, we stated that a resulting trust can arise "where title to property is transferred to one party, the trustee, although another party, the beneficiary of the trust, paid the purchase price for that property." 126 Idaho at 470, 886 P.2d at 775. With respect to the payment of the purchase price, we stated that the beneficiary must have "paid or incurred an absolute obligation to pay for that property." *Id.*

The district court found, "George Kelley's testimony that he agreed, as part of the arrangement, to an absolute obligation to pay the Yadon's [sic] loans for the farm was credible and corroborated by Kim Yadon's testimony." Warren contends that the evidence does not support the finding that the Kelleys had incurred an absolute obligation to pay the loans because such obligation was not in writing. He states: "[T]he Yadons were the only parties who incurred a <u>written</u> obligation to re-pay the loan. . . . The Kelleys did nothing to bind themselves in

3

writing to make payments on the loan to either the bank or the Yadons." (Emphasis in original.) He "requests that this Court make [a] legal determination that a verbal agreement to repay a loan in some else's [sic] name does not rise to the level of 'incurring an **absolute obligation**' to pay the purchase price for the property." (Emphasis in original.)

Warren contends that this request is supported by our opinion in *Hettinga*. He states, "Even in *Hettinga*, where the purchase price was not delivered up front at the time of closing, and instead was being paid on a monthly installment basis, this Court still declined to impose a resulting trust where the Hettinga's [sic] were reimbursing the monthly installments to the Sybrandys." Warren misstates what we held in *Hettinga*.

The facts in that case were that the Hettinga's hoped to purchase a dairy, but were financially unable to do so. The Sybrandys, Mrs. Hettinga's parents, "agreed to purchase the dairy and lease the property to the Hettingas for a monthly payment equal to the payment due on the underlying land sale contract." *Id*. at 468, 886 P.2d at 773. Mr. Hettinga testified at trial that the parties intended at the time of the closing that "the Sybrandys would purchase the dairy in their name to receive certain tax benefits, but that at some point in the future, the Hettingas could 'take over' ownership by repaying the out-of pocket costs incurred by the Sybrandys." *Id*. at 470, 886 P.2d at 775. The trial court did not find Mr. Hettinga's testimony persuasive. It "found that Mr. Hettinga's uncorroborated testimony regarding the Sybrandys' intent at the time the property was purchased did not rise to the clear and convincing degree of proof required to establish a resulting trust." We merely held that the "court's finding that such uncorroborated and disputed evidence was not clear and convincing proof of the parties' intent is supported by evidence that is both substantial and competent." *Id*.

Thus, in *Hettinga* we did not hold that a resulting trust cannot arise where the beneficiary orally agreed to repay the trustee for the purchase price of the property. In fact, over 100 years ago in *Pittock v. Pittock*, 15 Idaho 426, 98 P. 719 (1908), we held that a resulting trust could be created in that circumstance.

In *Pittock*, the plaintiff brought an action in ejectment to remove a widow from a house and lot that were titled in the plaintiff's name. The widow counterclaimed, alleging she was the beneficiary of a resulting trust in the property. She offered evidence at the trial that she and her husband had arranged to purchase the property from the owners for $3,000; that the plaintiff orally agreed to purchase the property in his name and hold it in trust for the widow, conveying it

4

to her when he was paid all sums he had advanced; that the plaintiff paid $1,500 to the owners as a down payment and gave a mortgage for the balance of $1,500, and the owners deeded him the property; that the down payment consisted of $550 borrowed from others by the widow, $50 paid to the owners by her husband, and $900 paid by the plaintiff as a loan to the widow; and that her husband, prior to his death, had fully paid the plaintiff all the money advanced by him as the purchase price. The district court granted judgment for the plaintiff, simply stating, without explanation, that it "found that there was no competent evidence to sustain certain facts alleged in the cross-complaint." This Court vacated the judgment and remanded for a new trial.

We held that the evidence is sufficient to establish a resulting trust. We stated that to establish a resulting trust of the type alleged in the case, "the payment of the purchase price should actually be made by a person asserting the trust, or by some one for her, or that a binding obligation therefor be incurred by such person as a part of the original transaction at or before the time of the conveyance." *Id*. at 432, 98 P. at 721. We also held that the binding obligation to pay the purchase price can be an oral agreement to repay the purchaser (trustee) for the sums he paid to acquire the property, citing holdings from other courts. *Id*. at 431-33, 98 P. at 721. One of those courts held that "a resulting trust arises by operation of law . . . in favor of a person from whom [the purchase money] is advanced by way of a loan; the title being taken in the name of the lender as security for its payment." *Id*. at 431, 98 P. at 721. The other held that a resulting trust was created when "the purchaser of land [orally] agrees to buy and hold it for the joint benefit of himself and another, the latter paying no part of the purchase money, but the purchaser advancing half of it for himself and half of it as a loan to the other party." *Id*. at 432, 98 P. at 721.

We then concluded, "If the [plaintiff] advanced the $900 referred to in the evidence at the request of the [widow] and with the agreement that it should be repaid to him, in that case he holds the property as trustee for the [widow]." *Id*. at 433, 98 P. at 722. Thus, an oral agreement to repay the purchaser (trustee) the purchase price of the property is sufficient to constitute an absolute obligation by the beneficiary to pay the purchase price.

Warren also contends that there is insufficient evidence to support the finding of a resulting trust because the Kelleys "never demonstrated when or under what circumstances the Montgomery farm would be returned to the Kelleys." That statement is inaccurate. George

5

Kelley testified that the agreement was that he would receive title to the farm when he paid off the property.

> Q. And were you going to get – did you discuss ever your getting the property back?
> A. Yes.
> Q. What was said about that?
> A. Well, when we – the property was paid off, I was to get it back, and that was the purpose of putting a loan on it and the reason I farmed it all the time, 100 percent.

Warren also claims that the district court improperly shifted the burden of proof to him. George Kelley and Kim Yadon testified that George had paid all sums due to the Yadons, while Warren testified that he had not. With respect to that conflict in the evidence, the district court wrote:

> George Kelley and Kim Yadon testified that George has always reimbursed the Yadons in full for any payments they have made. Warren testified that Kelley has not reimbursed the Yadons in full for payments they made, but presented no financial records or persuasive documentation to establish what payments the Yadons had made, the amounts of the payments, and no records were apparently kept to substantiate George Kelley's reimbursement payments to the Yadons.

Warren contends, "the trial court improperly placed the burden upon Warren Yadon to come up with 'persuasive documentation' to support his testimony." Warren misconstrues the court's statement. The court was addressing credibility, not the burden of proof. "It is the province of the trial court to determine the credibility of witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence." *KMST, LLC v. County of Ada*, 138 Idaho 577, 581, 67 P.3d 56, 60 (2003). The court expressly found that the testimony of Kim Yadon, Kitty Kelley (the Kelleys' daughter), and George Kelley "was credible and substantial" and that the testimony of Warren Yadon was conclusory at best.

Warren Yadon has not shown that the district court erred in finding that the Kelleys had proved a resulting trust. We therefore affirm the judgment of the district court.

**B. Did the District Court Err in Denying Warren Yadon's Claim for Eviction?**

Warren Yadon contends that since the Yadons purchased the farm, the Kelleys have leased it without a written lease as year-to-year tenants, that he gave them notice terminating the lease, and that he served them with notice of eviction. He asks this Court to enter judgment on

6

his claim of eviction. Because we have upheld the finding of a resulting trust, the district court did not err in dismissing Warren's claim for eviction. As the beneficial owners of the farm, the Kelleys are entitled to possession of it.

**C. Did the District Court Err in Awarding Attorney Fees to the Kelleys?**

The Kelleys and Kim Yadon each filed a memorandum of costs seeking an award of court costs, including attorney fees. Warren Yadon did not file a timely motion to disallow any of the claimed costs. By failing to do so, he waived all objections to the costs claimed. Idaho R. Civ. P. 54(d)(6). The district court awarded the Kelleys and Kim court costs, including attorney fees. Warren listed as an issue on appeal that the district court erred "in awarding attorney fees to the Kelleys," but he did not present any argument or authority in support of that issue. "We will not consider assignments of error not supported by argument and authority in the opening brief." *Hogg v. Wolske*, 142 Idaho 549, 559, 130 P.3d 1087, 1097 (2006).

**D. Is Any Party Entitled to an Award of Attorney Fees on Appeal?**

Warren Yadon seeks an award of attorney fees on appeal pursuant to Idaho Code §§ 12-121 and 6-324. Warren is not entitled to an award of attorney fees on appeal for two reasons. First, both statutes only provide for the awarding of attorney fees to the prevailing party. He is not the prevailing party on appeal. Second, "in order to be entitled to attorney fees on appeal, authority and argument establishing a right to fees must be presented in the first brief filed by a party with this Court. A citation to statutes and rules authorizing fees, without more, is insufficient." *Carroll v. MBNA America Bank*, 148 Idaho 261, 270, 220 P.3d 1080, 1089 (2009) (citations omitted). Warren merely cited the statutes, without presenting any argument.

The Kelleys request an award of attorney fees on appeal. They do not cite a statute authorizing an award of attorney fees, but they cite *Crowley v. Critchfield*, 145 Idaho 509, 181 P.3d 435 (2007), and present argument that Warren's appeal was brought without foundation and simply invites the appellate court to second guess the trial court as to the weight of the evidence. The *Crowley* case states: "Under I.C. § 12-121, a party is entitled to attorney's fees if the appeal merely invites the appellate court to second guess the trial court on the weight of evidence. Attorney's fees may also be awarded if the appeal was brought or defended frivolously, unreasonably, or without foundation." *Id*. at 514, 181 P.3d at 440 (citations omitted). That is

sufficient reference to Idaho Code § 12-121 and supporting argument. We agree with the Kelleys that this appeal was brought without foundation and merely invited this Court to reweigh the evidence. We award the Kelleys attorney fees on appeal.

Kim Yadon also requests an award of attorney fees on appeal. She did not cite any authority in support of her request. She is therefore not entitled to an award of fees. *Callaghan v. Callaghan*, 142 Idaho 185, 191, 125 P.3d 1061, 1067 (2005).

## V. CONCLUSION

We affirm the judgment of the district court. We award costs on appeal to the respondents and attorney fees to the Kelleys.

Justices BURDICK, J. JONES, W. JONES, and HORTON **CONCUR**.