## IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 42698-2014

DENNIS J. SALLAZ and MARCY FOX,  )
)  Boise, November 2016 Term
    Plaintiffs-Appellants,  )
)  2016 Opinion No. 134
v.  )
)  Filed: November 23, 2016
EUGENE (ROY) RICE and JANET RICE,  )
husband and wife, and MICHAEL RICE,  )  Stephen W. Kenyon, Clerk
)
    Defendants-Respondents.  )
)

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, in and for Ada County. Hon. Jason D. Scott, District Judge.

The judgment of the district court is <u>affirmed</u>.

Vernon K. Smith, Jr., Boise, argued for appellants.

J. Kahle Becker, Boise, argued for respondents.

---

EISMANN, Justice.

This is an appeal out of Ada County from an order denying the Plaintiffs' motion for a directed verdict. We affirm the denial of the motion and therefore uphold the jury verdict and judgment in favor of the Defendants.

## I.
## Factual Background.

Dennis J. Sallaz was the owner of a 1954 Cadillac Eldorado that he had purchased in 1964. In 1991, Mr. Sallaz granted Eugene "Roy" Rice a lien on the Cadillac, and a new certificate of title was issued on July 17, 1991, showing that Roy Rice had a lien on the car. On July 22, 1991, Mr. Sallaz had a duplicate of that certificate of title issued to himself.

Mr. Sallaz was counsel for Mr. Rice, and they were close friends and business associates for many years. Their relationship soured, and on January 17, 2011, Mr. Rice had his son

Michael Rice repossess the Cadillac. On January 24, 2011, Michael Rice, on behalf of his father, presented an Affidavit of Repossession to the Idaho Transportation Department, and the Department issued a new certificate of title showing that the owner of the Cadillac was Eugene LeRoy Rice or Rose Jeanette Rice, who was his wife. Mr. Rice later sold the Cadillac for the sum of $25,000.

On April 11, 2011, Mr. Sallaz filed this action against Mr. Rice, his wife, and his son seeking to recover possession of the Cadillac or, if he could not do so, damages for conversion in the sum of $75,000. In the verified complaint, Mr. Sallaz averred that "[a]t all times relevant hereto (except as may be specified), Plaintiff was the sole owner of a 1954 Cadillac, VIN 546265334." He also averred that he had granted Mr. Rice a lien on the Cadillac in July 1991 because Mr. Rice had offered to loan money to Mr. Sallaz, that the transaction never closed, and that Mr. Rice signed the certificate of title releasing his lien on July 20, 1995. A copy of the duplicate title was attached to the complaint, and it showed a signature of "Roy Rice" releasing the lien. In his verified answer and counterclaim, Roy Rice alleged that his purported signature releasing the lien was a forgery.

The bottom portion of the duplicate title had a form for transferring ownership of the vehicle, and it had been filled out showing that on January 1, 2011, Mr. Sallaz had transferred ownership of the Cadillac to Marcy Fox, his fiancé. She was later added as a plaintiff in this action, although Mr. Sallaz also continued to prosecute the case in his name pursuant to a power of attorney that she had executed on February 11, 2011.

Mr. Sallaz sought a writ of possession to gain possession of the Cadillac, but the district court denied the writ because "Mr. Rice has shown with sufficient probability that he is the official owner of record of the 1954 Cadillac Eldorado and that he is entitled to possession of the vehicle." There were other claims filed between the parties, and all of the various claims were tried to a jury from June 30 through July 21, 2014. The other claims are not relevant to this appeal.

After the Defendants rested, Mr. Sallaz moved for a directed verdict. The district court denied the motion, and the jury returned a special verdict finding that the Plaintiffs had failed to prove their claim against the Defendants for conversion of the Cadillac. The Plaintiffs timely appealed.

2

## II.
### Did the District Court Err in Denying the Plaintiffs' Motion for a Directed Verdict?

When reviewing the grant or denial of a motion for a directed verdict, we conduct an independent review of the evidence and do not defer to the findings of the trial court. *Gillingham Constr., Inc. v. Newby-Wiggins Constr., Inc.*, 136 Idaho 887, 891, 42 P.3d 680, 684 (2002). Our standard of review is as follows:

> We must determine whether, admitting the truth of the adverse evidence and drawing every legitimate inference most favorably to the opposing party, there exists substantial evidence to justify submitting the case to the jury. The "substantial evidence" test does not require that the evidence be uncontradicted, or even that we find it persuasive. We do not weigh the evidence or consider the credibility of the witnesses. It requires only that the evidence be of sufficient quantity and probative value that reasonable minds could conclude that a verdict in favor of the party against whom the motion is made is proper. A directed verdict is proper only where the evidence is so clear that all reasonable minds would reach only one conclusion—that the moving party should prevail.

*Id.* at 891–92, 42 P.3d at 684–85. (Citations omitted.)

A claim of conversion requires proof of three elements: "(1) that the charged party wrongfully gained dominion of property; (2) that property is owned or possessed by plaintiff at the time of possession; and (3) the property in question is personal property." *Taylor v. McNichols*, 149 Idaho 826, 846, 243 P.3d 642, 662 (2010). In this case, there was no dispute that the Cadillac was owned by one of the Plaintiffs when it was repossessed and that it was personal property. The only issue in dispute was whether the Defendants wrongfully gained dominion over it.

Mr. Sallaz testified that in 1991 he and Roy Rice were working together to purchase something, that his part was to give Mr. Rice a lien on the Cadillac, that he did so, that Mr. Rice worked on the transaction for a long time, and that they backed out of the purchase because Mr. Rice could not get the price he wanted. According to Mr. Sallaz, in 1995 he was going through his car documents and noticed that he had never had Mr. Rice release the lien. He therefore went to Mr. Rice's house and had him sign the release of lien. Mr. Sallaz produced at trial the duplicate title that he had issued on July 22, 1991. A signature purporting to be that of Roy Rice was written in the place on the title for releasing a lien against the Cadillac along with the release date of "7-20-95." Mr. Sallaz stated that after 1995, Roy and Michael Rice did not have any

basis for claiming to have a lien on the Cadillac. Finally, he testified that neither of them ever made a demand for payment of the alleged loan or gave notice that they were going to repossess the Cadillac.

Michael Rice died before the trial, and Roy Rice was too ill to attend the trial. However, Mr. Sallaz took Roy Rice's video deposition about a year before the trial. In the portions of the deposition played during the trial, Mr. Rice testified that he received the lien on the Cadillac as security for a loan he made to Mr. Sallaz, that he thought the amount of the loan was in the neighborhood of $1,000, that he lawfully repossessed the Cadillac, and that Mr. Sallaz owed him money. Mr. Rice also testified that in 2005 Mr. Sallaz testified in another case that Mr. Rice was the lienholder on the title. The Defendants introduced a document titled "Husband's Property and Debt Schedule" prepared by Mr. Sallaz in connection with his 2005 divorce action. The schedule had several columns, one of which was titled "Description" and another which was titled "Husband's Comments." He listed "54 Cadillac Eldorado Convertible" in the Description column, and with respect to that entry he wrote in the Husband's Comments column, "Acquired title 2/4/1965, subject to lien."

After the Defendants rested, Mr. Sallaz's counsel Vernon K. Smith moved for a directed verdict. He argued: "[W]e have no documents showing the loan, and we have no testimony as to the amount of the loan. We have no testimony that it was not paid or that it was paid or that it was satisfied." He also argued that Roy Rice signed the title releasing the lien, that the district court could look at Mr. Rice's purported signature on the duplicate title and his signature on two other documents, and that "I think you'll conclude, that's the same person who was the author of those signatures. That demonstrates that in fact that was the release put on that title by Mr. Rice in 1995." Finally, he argued: "There was never a demand. There was never notification of an obligation owing. From 1991 until 2011, 20 years, there's no notice of demand. There's no claim. And you've got to give notice to an individual if you claim he is delinquent on a payment, if in fact there's a lien. So we've got no obligation."

In denying the motion, the district court stated that, assuming Roy Rice's testimony was true, there was a $1,000 loan; there was no evidence of repayment; that without evidence of an agreed-upon time for repayment, the payment was due within a reasonable time; and that twenty years was not a reasonable time. The district court was correct that there was conflicting

4

evidence, but Mr. Rice's testimony, if believed, was sufficient to preclude the Plaintiffs' motion for a directed verdict regarding their conversion claim.

During Mr. Sallaz's cross-examination, he was shown the duplicate title that he testified he saw Mr. Rice sign in 1995 to release the lien and a document that Mr. Sallaz had obtained from the Transportation Department on which Michael Rice had signed Roy Rice's name pursuant to a power of attorney. Mr. Sallaz testified that the Roy Rice signatures on both documents looked similar. When it was pointed out that one "Roy Rice" signature was actually signed by Michael Rice, Mr. Sallaz's response was, "Well, with those guys, I wouldn't bet on anything." There were also other documents signed by Roy Rice that were admitted into evidence, and his signature on those documents did not look anything like his purported signature on Mr. Sallaz's duplicate title. The argument by Mr. Sallaz's counsel that the district court should compare the purported signature of Roy Rice that was on Mr. Sallaz's duplicate title with Mr. Rice's signature on other documents was an acknowledgement that there was a genuine issue of fact as to whether Mr. Rice had signed Mr. Sallaz's duplicate title.

On appeal, Mr. Sallaz argues: "Any repossession, in the absence of a demand and a default, under Article 9 of the UCC, is a failure to follow the required procedures under the Code, and is unlawful. An unlawful repossession amounts to a conversion, as a matter of law."

Mr. Sallaz does not cite any authority requiring a demand by Roy Rice before he could take possession of the Cadillac. Article 9 of the Uniform Commercial Code does not require any demand before the secured party can take possession of the collateral when there is a default. There was no testimony that the loan agreement specified a time for repayment or that it required a demand before the obligation to repay became due.

Mr. Sallaz mistakenly believes that a debt payable "on demand" requires that a demand be made before the cause of action accrues. "The authorities are to the effect that, where no time of payment is specified in a contract for the payment of money, it is payable immediately . . . ." *Zaring v. Lavatta*, 36 Idaho 459, 211 P. 557, 558 (1922). "That a cause of action for money payable on demand accrues with the inception of the obligation and *without the necessity for any demand* hardly requires the citation of authority." *Miguel v. Miguel*, 193 P. 935, 936 (Cal. 1920) (emphasis added).

A loan repayable on demand does not require that there be a demand before the repayment is due, as this Court held in *Mahas v. Kasiska*, 47 Idaho 179, 276 P. 315 (1928). In

5

*Mahas*, the plaintiff brought an action to recover on a promissory note that was payable "on demand," but the action was filed more than five years after the execution of the note. *Id*. at 183, 276 P. at 316. The defendant raised the statute of limitations as a defense, but the trial court entered a judgment in favor of the plaintiff. *Id*.

On appeal, the defendant contended that the statute of limitations began to run when the note was executed, and the plaintiff contended that there was an oral agreement that the note would not be payable until demand had been made. *Id*. This Court reversed, holding that the statute of limitations began to run on the date the note was executed. *Id*. at 184, 276 P. at 317. This Court explained as follows:

> The legal effect of an instrument payable on demand, such as the one in question, is that it is due immediately, and that the statute of limitations commences to run from the date of its execution. To give such evidence the effect urged by respondent would change the legal effect of the note, in that, instead of maturing at the date of its execution, it would not mature, and the statute would not commence to run, until demand for payment was actually made. Parol evidence is inadmissible to vary the plain terms and conditions of a promissory note; and its legal effect can no more be contradicted, changed or explained by extrinsic evidence than the writing itself.

*Id*. (citations omitted).

The statute of limitations does not begin to run until the cause of action has accrued. *Conway v. Sonntag*, 141 Idaho 144, 147, 106 P.3d 470, 473 (2005). If a demand is an essential element of, or a condition precedent to having, a cause of action, then the cause of action to enforce the note payable on demand in *Mahas* would not have accrued until demand was made. However, this Court held that the cause of action to enforce a note payable on demand accrued when the note was executed, not when demand was made. Because there was no time agreed upon for the repayment of the loan, it was due immediately, and no demand was necessary.

On appeal, Mr. Sallaz contends that the alleged debt owing to Roy Rice was time barred by the statute of limitations. He asserts, "The debt, had it ever existed, became time barred and uncollectable by the four year statute of limitations for oral contracts (I.C. § 5-217)." If it was time barred, then there was obviously no necessity for a demand because the cause of action accrued without a demand.

Mr. Sallaz is correct that a default was required before the Cadillac could be repossessed. Idaho Code section 28-9-609 provides that after default, a secured party may take possession of the collateral without judicial process, if the secured party can do so without a breach of the

6

peace.[1]  There was no contention in this case that the Defendants breached the peace when repossessing the Cadillac.  The statute of limitations would have run on an action by Mr. Rice to collect the amount owing on the loan.  However, the running of the statute of limitations does not extinguish the debt.  *Joseph v. Darrar*, 93 Idaho 762, 766, 472 P.2d 328, 332 (1970).  "Statutes of limitations are limitations on a party's right to bring an action.  A statute of limitations does not apply (1) to defenses where no affirmative relief is sought, or (2) to self-help set-offs and pledges."  *Smith v. Idaho State Univ. Fed. Credit Union*, 114 Idaho 680, 683, 760 P.2d 19, 22 (1988). (Citation omitted.)  The Uniform Commercial Code does not provide a definition of the word default, but the definition of that word is "[t]he omission or failure to perform a legal or contractual duty; esp., the failure to pay a debt when due."  Black's Law Dictionary 428 (7th ed. 1999).  It was undisputed that Mr. Sallaz did not repay the loan made by Mr. Rice.  In fact, Mr. Sallaz contended that there never was a loan.  Therefore, there was sufficient evidence of Mr. Sallaz's default.

Mr. Sallaz asserts that there was no testimony that Mr. Rice had personally made the loan.  That assertion is incorrect.  Mr. Rice was asked whether one of his businesses made the loan, and he stated, "I was the one who come up with the money for the loan."

The district court did not err in denying Mr. Sallaz's motion for a directed verdict.  The court correctly held that, admitting the truth of the adverse evidence and drawing every legitimate inference most favorably to the Defendants, there existed substantial evidence to justify submitting the case to the jury.

## III.

---

[1] The statute states:

> **28-9-609. Secured party's right to take possession after default.** (a) After default, a secured party:
>> (1)  May take possession of the collateral; and
>> (2)  Without removal, may render equipment unusable and dispose of collateral on a debtor's premises under section 28-9-610.
>
> (b)  A secured party may proceed under subsection (a) of this section:
>> (1)  Pursuant to judicial process; or
>> (2)  Without judicial process, if it proceeds without breach of the peace.
>
> (c)  If so agreed, and in any event after default, a secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties.

**Did the District Court Err in Permitting the Defendants to Withdraw Their Counterclaim for Quiet Title to the Cadillac?**

On April 28, 2011, Roy and Rose Rice filed a counterclaim seeking to quiet their title in the Cadillac. Their prayer requested that the court issue an order quieting their title in the Cadillac.[2] On May 12, 2014, they filed a third amended counterclaim. Although the quiet title cause of action remained in the counterclaim, the prayer no longer included a request for a court order quieting their title in the Cadillac. By the time the third amended counterclaim was filed, Roy Rice had sold the Cadillac to a third party.

An action can be brought to quiet one's title in real or personal property. I.C. § 6-401. In an action for quiet title, there is no right to a jury trial. *Anderson v. Whipple*, 71 Idaho 112, 121, 227 P.2d 351, 356 (1951). After the jury verdict, the district court raised the issue of whether there should be a court trial regarding the quiet title counterclaim. The Defendants agreed that the counterclaim was moot, and the Plaintiffs disagreed. In its memorandum decision denying post-trial motions, the district court held that the quiet title claim was moot. The court found the following facts:

> 3. During the course of litigation, Rice sold the Cadillac to a third party for $25,000. The jury nevertheless found that Sallaz (and Marcy Fox, to whom Sallaz had attempted to gift the Cadillac) failed to prove conversion of the Cadillac.
> 4. No party to this action knows or recalls the buyer's identity or knows the Cadillac's present location.
> 5. No facts admitted into evidence at trial suggest there is reason to believe the Cadillac will be located in the future.

The district court then held that the issue was moot, reasoning as follows:

> 5. Under the legal standards set forth above, the mootness doctrine focuses on whether granting the requested relief would provide a real remedy to the claimant. A judgment for quiet title to the Cadillac would have no practical impact on the Rices. They have sold the Cadillac to a third party, and the jury has exonerated them from the claim that their taking and sale of the Cadillac was an unlawful conversion of the Cadillac, leaving them without an identifiable need for a judicial determination that their already-relinquished claim to the Cadillac is superior to Sallaz's claim to it. Consequently, the Rices' quiet-title counterclaim is moot—a

---

[2] Mr. Rice apparently believed that once he repossessed the Cadillac, he became its owner. He filed for and received a certificate of title naming him or his wife as the owners of the car. The Plaintiffs did not file a claim seeking the difference between the amount of the lien and either the sale price of the car or the value of the car.

conclusion that can be reached without need to consider whether a judgment refusing, rather than granting, the requested relief would have practical significance.

Whether the trial court correctly held that a cause of action was moot is a question of law over which we exercise free review. *State v. Manley*, 142 Idaho 338, 342, 127 P.3d 954, 958 (2005). A cause of action is moot when the party asserting it has received all of the relief to which that party might have been found to be entitled, only a hypothetical question remains, and it is impossible for the court to grant that party any other or additional relief. *Dorman v. Young*, 80 Idaho 435, 436–37, 332 P.2d 480, 481 (1958).

The district court did not err in holding that the Rices' counterclaim for quiet title was moot. They had successfully defended against the Plaintiff's conversion claim, and they had sold the Cadillac to a third party. The court could not give them any other or additional relief, and they certainly would not have a quiet title claim against the person who had purchased the Cadillac for cash.[3]

## IV.
### Are the Defendants Entitled to an Award of Attorney Fees on Appeal?

The Defendants requested an award of attorney fees on appeal, stating:

> Respondents seek an award of attorney fees and costs for defending against this frivolous appeal pursuant to IAR 40 and 41. The standard for making an award of attorney fees on appeal is whether the appeal was brought, pursued or defended frivolously, unreasonably or without foundation. *East Shoshone Hosp. Dist. v. Nonini*, 109 Idaho 937, 712 P.2d 638 (1985).

They then argued why the appeal was pursued frivolously, unreasonably, and without foundation.

This Court has "'repeatedly held that simply requesting an award of attorney fees pursuant to Idaho Appellate Rule 41, without citing any statutory or contractual basis for the award, is insufficient to raise the issue of attorney fees on appeal.'" *International Real Estate Solutions, Inc. v. Arave*, 157 Idaho 816, 821–22, 340 P.3d 465, 470–71 (2014). "A party must

---

[3] Mr. Sallaz's claim against the Defendants was based solely upon the contention that they had stolen the Cadillac. He did not claim damages pursuant to Idaho Code section 28-9-625, including the right to a surplus realized from the sale of the Cadillac.

point to a statute or contractual provision authorizing an award of attorney fees on appeal." *Ticor Title Co. v. Stanion*, 144 Idaho 119, 127, 157 P.3d 613, 621 (2007).

The Defendants do not cite any statutory authority for an award of attorney fees, but they do cite *East Shoshone Hospital District v. Nonini*, 109 Idaho 937, 712 P.2d 638 (1985), for the proposition that "[t]he standard for making an award of attorney fees on appeal is whether the appeal was brought, pursued or defended frivolously, unreasonably or without foundation." In that case, the hospital sought an award of attorney fees on appeal on the ground that "the county has defended this suit frivolously and without foundation." *Id*. at 942, 712 P.2d at 643. In denying the requested award of attorney fees, this Court stated:

> Unless otherwise provided for by statute or by contract, "attorney fees will only be awarded when this court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation." *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979).

*Id.*

In *Minich*, this Court held that, "[i]n normal circumstances, attorney fees will only be awarded [under Idaho Code section 12-121] when this court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation." 99 Idaho at 918, 591 P.2d at 1085. In *Kelley v. Yadon*, 150 Idaho 334, 247 P.3d 199 (2011), this Court held that the respondents had adequately cited Idaho Code section 12-121 for their requested award of attorney fees on appeal by citing a case that addressed the award of attorney fees on appeal under that statute. *Id*. at 338, 247 P.3d at 203. Under *Kelley*, the Defendants have adequately cited Idaho Code section 12-121.

The Defendants did not include any argument regarding attorney fees in the argument section of their brief, but they did include argument in the section of their brief titled "Additional Issues on Appeal." "[W]e have repeatedly held that when a request for fees is accompanied by citation to authority and argument for the request, we will not deny the request simply based on the location of the argument." *Pocatello Hosp., LLC v. Quail Ridge Med. Investor, LLC*, 156 Idaho 709, 721, 330 P.3d 1067, 1079 (2014); *accord Knipe Land Co. v. Robertson*, 151 Idaho 449, 461, 259 P.3d 595, 607 (2011). We agree that this appeal was brought frivolously, unreasonably, and without foundation. We therefore award the Defendants attorney fees on appeal.

10

## V.
## Conclusion.

We affirm the judgment of the district court, and we award Respondents costs and attorney fees on appeal.

Chief Justice J. JONES and Justices BURDICK, W. JONES and HORTON **CONCUR.**

11