(No. 5147.   April 5, 1930.)

G. F. HANSBROUGH, Respondent, v. D. W. STANDROD & COMPANY, a Defunct Banking Corporation of the State of Idaho et al., Defendants, and E. W. PORTER, Commissioner of Finance of the State of Idaho, UNITED STATES FIDELITY & GUARANTY COMPANY, a Corporation, and FEDERAL RESERVE BANK OF SAN FRANCISCO, a Corporation, Appellants.

[286 Pac. 923.]

John W. Jones and Guy Stevens, for Appellants Porter et al.

Merrill & Merrill, for Appellant Federal Reserve Bank of San Francisco.

Thomas & Andersen, Hawley & Hawley, and G. F. Hansbrough, for Respondent.

Dean Driscoll, *Amicus Curiae.*

BRINCK, District Judge.—The respondent is a practicing attorney at law who, in November, 1921, was employed by D. W. Standrod & Company, a banking institution, to bring a suit against a firm known as Swauger Brothers and others. After the suit was commenced a settlement was made between the plaintiff and defendants therein, whereby the bank received certain notes of the defendants and, as collateral security for their payment, received 81,999 shares of the capital stock of Swauger Land & Livestock Company, a corporation. Upon learning of the settlement, respondent obtained an agreement from Standrod & Company that his fees should be credited upon notes he had given to the bank and which were then held by the appellant Federal Reserve Bank of San Francisco. In February, 1923, respondent and the law firm of Thomas & Andersen were

employed by Standrod & Company to bring suit upon the Swauger notes which had been obtained in the previous settlement. This suit, after it was commenced, was likewise settled before trial, this time with the consent of counsel, and in this settlement Standrod & Company became the owner of the shares of stock that had previously been pledged to it, and received in addition notes of the Swaugers aggregating some $22,000. In this connection it was again agreed that the attorneys' fees earned by respondent and his associates in the second suit should be credited upon notes they had given to Standrod & Company, which notes were also in the hands of the Federal Reserve Bank as pledgee. On November 28, 1923, the bank of Standrod & Company closed its doors, and was taken in charge by the appellant commissioner of finance of the state of Idaho; and the attorneys' fees of respondent and his associates were never credited upon their notes to Standrod & Company, these notes having been at all times herein involved in the possession of the Federal Reserve Bank as collateral securing notes to it of Standrod & Company.

After the Standrod & Company bank closed, respondent and his associates filed with the commissioner of finance claims for their attorneys' fees and for preference thereof as trust funds, which preference was disallowed. They appealed from said ruling to the district court which denied the preference, but allowed them attorneys' liens upon the massed assets of Standrod & Company. On appeal to this court the judgments of the district court allowing liens upon the massed assets were reversed, but, the record and briefs indicating that the certificates of stock were then in the ' hands of the commissioner, the district court was directed to enter judgments declaring attorneys' liens upon the stock and ordering its sale to satisfy the liens. (*Hansbrough v. D. W. Standrod & Co.*, 43 Ida. 119, 249 Pac. 897, 899; *Thomas v. D. W. Standrod & Co.*, 43 Ida. 157, 249 Pac. 900.)

It now appears, however, that in October, 1923, Standrod & Company had transferred the Swauger notes and the

stock owned by it in the Swauger company to the Federal
Reserve Bank as collateral to secure its own notes to that
bank, for which it had been given credit, and that the
Swauger notes and stock were never in the hands of the
commissioner of finance as assets of Standrod & Company.
It is shown that the Federal Reserve Bank accepted these
securities without knowledge of the lien of plaintiff and his
associates, and that it was first advised thereof after it had
in September, 1924, received from J. W. Swauger an offer
to purchase the Swauger notes and stock for $15,000, and
had notified the commissioner of finance that the offer would
be accepted in the absence of objection within a specified
time. At this time, before the stock was sold, plaintiff
notified appellant Federal Reserve Bank of his claim of
lien, and warned it not to sell the stock. The offer was
accepted, and the sale of the collateral made.

After the decisions in the former cases by this court,
which were rendered in September and October, 1926, the
respondent, in his own right and as assignee of his asso-
ciates, brought this suit against the appellants Federal
Reserve Bank and the commissioner of finance and his
surety, to recover the amount of the attorneys' fees of him-
self and his assignors as damages for the alleged conversion
of the stock upon which respondent and his assignors had
an attorney's lien. The trial court found that the appel-
lants had, by a sale of the property to Swauger, converted
it; that the liens of respondent and his assignors had not
been affected by the pledge of the property to the Federal
Reserve Bank; that they were not guilty of laches and had
not waived their liens upon the property; and awarded
the respondent judgment against the appellants for $7,000
and interest, from which judgment this appeal is taken.

The evidence fails to establish any cause of action
against the commissioner of finance. He never had posses-
sion of the property, and did nothing injuring plaintiff's
security. It is true that in 1924, the Federal Reserve Bank,
with the consent of the commissioner, had new certificates
issued for the stock, a portion of the stock being reissued in

its name and a portion in the name of the commissioner. This was done so that the Federal Reserve Bank, as a stockholder of the corporation, could have access to its books. The commissioner indorsed the new certificate so made out to him to the Federal Reserve Bank. This transaction was a mere change in the form of the stock certificates, without any intention on the part of the bank to release its lien, and the commissioner did not thereby have or become entitled to the possession of the certificates, which at all times remained subject to the pledge agreement under which the Federal Reserve Bank had received them from Standrod & Company. The commissioner's act in this connection was entirely innocuous and in nowise affected the rights of the parties; and as to him it is clear the judgment must be reversed. For convenience, the Federal Reserve Bank will hereinafter be referred to as the appellant.

██ It is urged that the plaintiff, having brought this action as for the conversion of the certificates of stock, is not entitled to recover because he was not entitled to possession thereof; but it is well settled that where one has a lien on property injured, he may maintain an action for damages where the injuries complained of diminish the value of his security or operate to make it ineffectual, although he has neither the possession nor the right to possession. (11 C. J., p. 9, sec. 19; *Hugo State Bank v. Hugo Nat. Bank,* 96 Okl. 135, 220 Pac. 868; *Hahn v. Sleepy Eye Milling Co.,* 21 S. D. 324, 112 N. W. 843; *Rew v. Maynes,* 147 Iowa, 15, 125 N. W. 804.) And it seems clear that a sale of property in derogation of the rights of a lienholder, or an appropriation of the property to one's own use, is an injury within the meaning of this rule. (*First Nat. Bank v. Sorenson,* 30 Wyo. 136, 217 Pac. 948; *Fouts v. Ayres,* 11 Tex. Civ. App. 338, 32 S. W. 435; *McCown v. Kitchen,* (Tex. Civ. App.) 52 S. W. 801; *Forbes v. Parker,* 16 Pick. (Mass.) 462; *Hugo State Bank v. Hugo Nat. Bank, supra.*) The complaint sufficiently states a cause of action as against this objection.

██ Appellant claims that it occupies the position of a *bona fide* purchaser of the stock without notice of plaintiff's

lien, and that as such it is entitled to protection against such lien. The evidence is not entirely satisfactory as to whether appellant made any advances in reliance upon the pledge of the stock. It is shown that at the time appellant received the stock, Standrod & Company was indebted to appellant in the sum of more than $700,000, and that apparently in connection with the deposit of this and some $25,000 worth of other collateral, Standrod & Company executed and delivered to the appellant its demand note for nearly $600,000. The inference is that the new note was merely a renewal of antecedent indebtedness, and the testimony bearing upon the subject would tend to strengthen such inference. To occupy the position of *bona fide* purchaser, it is necessary that there be a valuable consideration, and the great weight of authority is that the transfer of property as security for an antecedent debt does not "render the transferee a *bona fide* purchaser, since the creditor parts with no value, surrenders no right, and places himself in no worse legal position than before." (2 Pomeroy's Equity Jurisprudence, 4th ed., sec. 749, p. 1532.) There are some decisions to the contrary, but this court has adopted the majority rule upon this point. (*Anglo-American Mill Co. v. Community Mill Co.*, 41 Ida. 561, 240 Pac. 446; *Millick v. Stevens*, 44 Ida. 347, 257 Pac. 30.) In *Pettengill v. Blackman*, 30 Ida. 241, 164 Pac. 358, an extension of time was given for payment of the antecedent indebtedness to secure which a conveyance was made; and the creditor was held to have given value by extending the time for payment.

The Uniform Stock Transfer Law (Sess. Laws 1927, chap. 88, p. 107) had not been enacted at the time of this transaction, and the overwhelming weight of authority, in the absence of statute, is that "a pledgee who takes corporate stock as a mere security for a pre-existing debt is not a purchaser for value within the rule that protects such purchasers against the equities of third parties in the stock." (Note, 9 A. L. R. 1619; *Commercial Nat. Bank v. Shriver*, 275 Fed. 12; *Bronson Elec. Co. v. Rheubottom*,

122 Mich. 608, 81 N. W. 563.) The case last cited is also authority for the proposition, which seems well established, that the taking of a new note when the collateral is deposited, if no extension of time is given, does not furnish the necessary consideration.

The statute governing attorneys' liens, under which it was held in *Hansbrough v. D. W. Standrod & Co., supra*, that plaintiff had and retained a lien upon the stock involved in this case, is as follows:

"The measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties, which is not restrained by law. From the commencement of an action, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor and the proceeds thereof in whosesoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment." (C. S., sec. 6576.)

Plaintiff contends that the *bona fides* of appellant are immaterial, and relies upon *Peri v. New York Central & H. R. R. Co.*, 152 N. Y. 521, 46 N. E. 849, and *Vrooman v. Pickering*, 25 Misc. Rep. 277, 54 N. Y. Supp. 389, where it is said that an attorney's lien is a statutory lien of which all the world must take notice. We do not think the language of the New York courts in those decisions is susceptible of the interpretation given by plaintiff; nor that, in a case where, as here, the attorney consented to the settlement made and acquiesced in the delivery to his client of the property received in the settlement, thus making it possible for third persons dealing with the property to be injured, if they should purchase it without notice and in ignorance of the attorney's lien, such a contention could be plausibly made. As to any lien of which no actual notice exists or constructive notice is provided and given, it is generally held that a *bona fide* purchaser will take the property free from the lien. (*Finney v. Harding*, 136 Ill.

573, 27 N. E. 289, 12 L. R. A. 605; *Thornton v. Carver,* 80 Ga. 397, 6 S. E. 915; *Lanterman v. Luby,* 96 N. J. L. 255, 114 Atl. 325; 1 Jones on Liens, 3d ed., sec. 1048; 2 Underhill on Landlord and Tenant, sec. 834; 37 C. J., p. 331.) On the other hand, an attorney's lien is entitled to as much protection as any other lien having a similar status. The New York court of appeals in *Fischer-Hansen v. Brooklyn Heights R. Co.,* 173 N. Y. 492, 66 N. E. 395, 398, in construing a statute identical with C. S., sec. 6576, says that a lien "clings to any property or money into which the subject can be traced, until it reaches the hands of a *bona fide* purchaser." We think it clear that plaintiff was entitled to assert his lien as against the appellant.

It is further urged that this action is barred by subdivision 3 of C. S., sec. 6611, which prescribes the limitation of three years for an action for taking, detaining or injuring any goods or chattels. If this were an action at law for the conversion of the property by one entitled to maintain trover, that statute would be applicable; but even under such statute, what seems to be the better rule is that one who purchases or takes in pledge chattels from a vendor or pledgor who is not entitled to so dispose of the property, is not guilty of conversion if he acts in ignorance of the true owner's rights until he has committed some act of actual conversion, or until, with notice of the rights of the true owner, he maintains his possession in defiance of the true owner's rights, as by refusing delivery on demand from the true owner. (*McJunkin v. Hancock,* 71 Okl. 257, 176 Pac. 740; *Coleman v. Francis,* 102 Conn. 612, 129 Atl. 718; *Dean v. Cushman,* 95 Me. 454, 85 Am. St. 425, 50 Atl. 85, 55 L. R. A. 959.) Plaintiff could have enforced his lien against the property while in the hands of appellant, and was not injured in its enforcement by any act of appellant's until it sold the property and appropriated the proceeds to its own use. We think plaintiff's cause of action accrued at the time of the sale; and this action, being begun within three years thereafter, was not barred by the statute of limitations.

Appellant urges that plaintiff, by his laches, is barred from prosecuting this action, in that he failed to assert his lien until appellant had accepted the stock in pledge and had sold it. In *Hansbrough v. D. W. Standrod & Co., supra,* it was said:

"It is urged that respondent's failure to assert his lien for more than two years constituted laches. But, so long as no one was being injured, he was entitled to the full period of limitations, which had not expired when he appealed from the Commissioner's decision."

As we have above pointed out, the appellant, not having parted with any value in reliance upon the pledge, did not change its position or suffer injury by receiving the stock; and it is admitted in the testimony on behalf of appellant that, before it sold the stock, plaintiff had notified it of his claim of lien and of his intention to enforce it if he failed in his action to impress a lien upon the massed assets of Standrod & Company, and at the same time warned appellant not to sell the stock. After such notice appellant acted at its own risk in disposing of the stock.

The same considerations apply to appellant's claim that, by his failure to assert his lien, plaintiff was estopped to now assert it; before appellant had done anything with reference to the stock which changed its position as a matter of law, it received notice from plaintiff of his demands.

Some six months after the stock had been sold, and after plaintiff had recovered his judgment in the district court granting him a lien on the massed assets of Standrod & Company, he assigned to appellant an interest in the judgment so recovered. Appellant urges that this assignment made it a part owner of plaintiff's present cause of action against it, and that he cannot maintain this action without appellant's consent or authority. We can see no merit to this contention, even if the effect of the former judgment were as appellant contends.

It is insisted that the complaint does not state a cause of action, and that the evidence fails to establish plaintiff's right to recover, in that no value of the stock

is alleged or proven. The burden was upon plaintiff to establish his injury, and he was not injured by appellant's sale of the stock except to the extent that the stock had a value. The only allegation is that the stock, about 82,000 shares, was of the par value of one dollar per share, which was a mere allegation of evidence and not of the ultimate fact of value. It appears that when Standrod & Company took over the stock from the Swaugers, it was appraised and received at less than its par value. As was expressly pointed out in *Hansbrough v. D. W. Standrod & Co., supra,* under these facts no presumption that the stock was worth its par value could be entertained. The only other evidence which was offered, which might be considered evidentiary of the value of the stock, was the fact that it was sold by appellant to Swauger, together with notes of the Swauger Brothers individually, of the face value of more than $22,000, for a total price of $15,000. While this evidence indicates that the stock and the notes together were worth at least $15,000, it does not show that a definite value was placed upon either the notes or the stock; and either of them might have been the only thing considered to be of value. Because of this uncertainty, the evidence fails to show that the stock had value in any particular amount, or that the plaintiff was injured by the sale. For this failure of allegation and proof, the judgment must be reversed also as to the Federal Reserve Bank.

The judgment of the trial court is reversed, with directions to dismiss the action as against the commissioner of finance, and the cause is remanded as to the Federal Reserve Bank for further proceedings in accordance herewith. Costs to appellants.

Givens, C. J., and Lee and Varian, JJ., concur.

Petition for rehearing denied.