# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 44477

ERIC R. CLARK, and CLARK         )
ASSOCIATES, PLLC,         )
        )
    Plaintiffs-Appellants,         )
v.         )     **Boise, August 2017 Term**
        )
JONES GLEDHILL FUHRMAN         )
GOURLEY, P.A., an Idaho Professional       )     **2017 Opinion No. 137**
Association; WILLIAM FUHRMAN,       )
individually, and as an agent of Jones Gledhill  ) 
Fuhrman Gourley, P.A.; and         )     **Filed: December 27, 2017**
CHRISTOPHER GRAHAM, individually,     )
and as an agent of Jones Gledhill Fuhrman    )     **Karel A. Lehrman, Clerk**
and Gourley, P.A.,         )
        )
    Defendants-Respondents.         )
        )

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Samuel A. Hoagland, District Judge.

District court order dismissing case and awarding attorney fees, <u>affirmed</u>.

Clark & Associates, Eagle, for appellants. Eric R. Clark argued.

Anderson, Schwartzman, Woodard, Brailsford, PLLC, Boise, for respondents. Amanda K. Brailsford argued.

_____

BURDICK, Chief Justice.

This appeal from the Ada County district court concerns attorney liens under Idaho Code section 3-205. In March 2016, Eric R. Clark and Clark and Associates, PLLC (collectively, Clark) sued the law firm of Jones Gledhill Fuhrman Gourley, P.A., and two individuals associated with that firm—William Fuhrman and Christopher Graham (collectively, Jones Gledhill). Clark alleged that Jones Gledhill, as Clark's former opposing counsel, was liable for failing to protect his attorney lien. Jones Gledhill moved to dismiss Clark's amended complaint (complaint) under Idaho Rule of Civil Procedure 12(b)(6), and the district court granted the

1

motion. In addition to dismissing Clark's complaint, the district court sealed several documents containing correspondence with and information about Clark's former clients, denied Clark's motion to amend, and awarded attorney fees under Idaho Code section 12-121 to Jones Gledhill. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The genesis of this appeal is *Forbush v. Sagecrest Multi Family Property Owners' Association, Inc.*, 162 Idaho 317, 396 P.3d 1199 (2017), a tort case that was recently before this Court in which a water heater emitted hazardous levels of carbon monoxide, killing one and seriously injuring another. In *Forbush*, Clark initially represented the plaintiffs (*Forbush* plaintiffs), and Jones Gledhill represented two of the defendants, Anfinson Plumbing and Daniel Bakken (*Forbush* defendants). As his co-counsel, Clark enlisted the Spence Law Firm (Spence), but after approximately three years, irreconcilable differences came to plague Clark and Spence's relationship, and Clark withdrew.

After withdrawing, in September 2015, Clark sent a letter to Jones Gledhill, which stated that he was "asserting an attorney lien according to I.C. § 3-205, which attaches to any settlement or verdict. Please include [Clark's] name on any settlement checks payable to the [*Forbush*] plaintiffs or any other payments related to a verdict or judgment."

A settlement between the *Forbush* defendants and the *Forbush* plaintiffs was reached in January 2016, at which time the *Forbush* defendants wrote a settlement check to the *Forbush* plaintiffs. Without informing Clark of the settlement, Jones Gledhill forwarded the settlement check to Spence. When Clark learned of the settlement and contacted Jones Gledhill, the enforceability of Clark's claimed lien became disputed. Clark then filed a complaint against Jones Gledhill in March 2016, alleging Jones Gledhill had "breached [its] duty to protect Clark's lien . . . ." Prior to filing this lawsuit, Clark had also filed lawsuits against Spence and the *Forbush* plaintiffs with claims arising from their alleged failures to protect Clark's lien.

Jones Gledhill moved to dismiss Clark's complaint under Idaho Rule of Civil Procedure 12(b)(6). Clark responded by filing a brief, declaration, and several exhibits revealing information about and correspondence with the *Forbush* plaintiffs, his former clients. Jones Gledhill moved to strike this information and correspondence. Moreover, the *Forbush* plaintiffs intervened and moved for the information and correspondence to be sealed as confidential client information. The district court granted Jones Gledhill's motions to strike and to dismiss. It

further granted the *Forbush* plaintiffs' motion to seal. Thereafter, Clark filed a motion to amend his complaint, but the district court denied the motion. Finally, the district court granted Jones Gledhill's request for attorney fees under Idaho Code section 12-121, finding that Clark had pursued the case frivolously, unreasonably, and without foundation. Clark timely appeals.

## II. ISSUES ON APPEAL

1.  Did the district court properly grant Jones Gledhill's motion to dismiss?

2.  Did the district court abuse its discretion by awarding attorney fees under Idaho Code section 12-121 to Jones Gledhill?

3.  Did the district court abuse its discretion by sealing certain documents?

4.  Did the district court abuse its discretion when it denied Clark's motion to amend?

5.  Is the prevailing party entitled to attorney fees on appeal?

## III. ANALYSIS

**A.  The district court properly granted Jones Gledhill's motion to dismiss.**

This Court reviews a district court's dismissal under Idaho Rule of Civil Procedure 12(b)(6) *de novo*. *Colafranceschi v. Briley*, 159 Idaho 31, 34, 355 P.3d 1261, 1264 (2015).

> "When considering a 12(b)(6) motion, we look only to the pleadings to determine whether a claim for relief has been stated." "A motion to dismiss for failure to state a claim should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle [the plaintiff] to relief.' " On review, this Court draws all reasonable inferences in favor of the non-moving party.

*Id.* (citations omitted).

Clark's complaint, the focus of our Rule 12(b)(6) inquiry, alleges Jones Gledhill is liable for "damages of at least $500,000.00" for failing to protect Clark's claimed attorney lien. The key allegations of Clark's complaint are specifically as follows:

> 21.    In January 2016, Anfinson Plumbing and Bakken settled with the Plaintiffs in the *Forbush* case for $1,000,000.00 and sent a check to the Spence Firm.

> 22.    Even before delivery to The Spence Firm, Clark's lien attached to the settlement funds in the hands of the Defendants.

> 23.    Notwithstanding the actual knowledge that Clark had represented the Plaintiffs in the *Forbush* case and despite Clark's written request that Defendants Fuhrman, Graham and Jones Gledhill Fuhrman Gourley, P.A. protect Clark's lien by listing Clark as a payee on any settlement check, Defendants Fuhrman, Graham and Jones Gledhill Fuhrman Gourley, P.A. provided the

3

$1,000,000.00 settlement funds to the Spence Firm without protecting Clark's lien.

24. Thereafter, The Spence Firm and/or the *Forbush* Plaintiffs converted Clark's fees.

25. As the Defendants had constructive and actual knowledge of Clark's attorney lien, the Defendants owed Clark a duty to protect his lien.

26. This duty included protecting Clark's lien by complying with Clark's request and placing Clark's name as a payee on the $1,000,000.00 Anfinson Plumbing settlement check.

27. The Defendants Fuhrman, Graham and Jones Gledhill Fuhrman Gourley, P.A. breached their duty to protect Clark's lien when the Defendants delivered the settlement check to the Spence Firm without protecting Clark [sic] lien interest.

28. As a direct and proximate result of the negligence of Defendants Fuhrman, Graham and Jones Gledhill Fuhrman Gourley, P.A., Clark has suffered damages of at least $500,000.00, plus accumulating interest, costs and attorney fees.

29. In the alternative, Defendants are required to compensate Clark for Clark's time and costs expended in recovering his attorney fees from The Spence Law Firm and/or his former clients in an amount to be proven at trial.

Clark's complaint then segues into requests for attorney fees and a jury trial before reiterating his damages requests in the complaint's prayer for relief. Nowhere does Clark allege or identify the elements of a specific cause of action. *Cf. Brown v. City of Pocatello*, 148 Idaho 802, 809–10, 229 P.3d 1164, 1171–72 (2010) ("Our notice pleading standard requires more than a naked recitation of facts from which a hyper-vigilant attorney could possibly foresee the possibility of a given cause of action."). Nevertheless, adhering to Rule 12(b)(6)'s command of drawing all reasonable inferences in favor of Clark, the non-moving party, we construe Clark's complaint as attempting to allege a claim in tort for "failing to protect his lien" and to enforce his lien against Jones Gledhill. Though we address each in turn, our analysis starts with the threshold question of whether section 3-205 gave rise to a lien in favor of Clark in the first place.

Idaho recognizes both possessory and charging liens for attorney fees. *See Frazee v. Frazee*, 104 Idaho 463, 464, 660 P.2d 928, 929 (1983). "The possessory or retaining lien is of common law origin and allows an attorney to keep possession of documents, money or other property obtained in his professional capacity until he receives payment for his professional

4

services." *Id.* This lien is considered "passive and not enforceable by foreclosure and sale." *Id.* The charging lien, by contrast, "is a lien for the attorney's 'services rendered in procuring a judgment, decree, or award for his client, which attaches to the client's cause of action, verdict and judgment and the proceeds thereof[,]' . . . is not dependent upon possession, and is capable of adjudication and enforcement." *Id.* at 465, 660 P.2d at 930 (quoting Stuart M. Speiser, *Attorneys' Fees* § 16:14 (1973)). Common law did not recognize the charging lien, but it has been codified under Idaho Code section 3-205, which provides:

> The measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties, which is not restrained by law. From the commencement of an action, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor and the proceeds thereof in whosoever hands they may come; and can not be affected by any settlement between the parties before or after judgment.

Clark's appeal implicates the interpretation of section 3-205, a question we review *de novo*. *Hayes v. City of Plummer*, 159 Idaho 168, 170, 357 P.3d 1276, 1278 (2015). Statutory interpretation begins with the statute's plain language. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999). That language "is to be given its plain, obvious and rational meaning." *Id.* If that language is clear and unambiguous, "the Court need merely apply the statute without engaging in any statutory construction." *Id.*

Under the plain terms of section 3-205, "the commencement of an action, or the service of an answer containing a counterclaim" gives rise to a charging lien in favor of "the attorney who appears for a party . . . ." *Cf. Kenneth F. White, Chtd. v. St. Alphonsus Reg'l Med. Ctr.*, 136 Idaho 238, 241, 31 P.3d 926, 929 (Ct. App. 2001) (holding that formal legal proceedings must be initiated, not a prospective claim merely settled short of formal legal proceedings, before an enforceable lien in settlement proceeds can arise). Section 3-205 makes attachment automatic, stating that the lien attaches "to a verdict, report, decision or judgment in his client's favor and the proceeds thereof in whosoever hands they may come," *i.e.*, the res of the lien. *See Skelton v. Spencer*, 102 Idaho 69, 75, 625 P.2d 1072, 1078 (1981) ("Of course, where the attorney's efforts are sterile, there would be nothing against which the lien right could be asserted . . . ."), *overruled on other grounds by Kinghorn v. Clay*, 153 Idaho 462, 283 P.3d 779 (2012); *Chief Indus., Inc. v. Schwendiman*, 99 Idaho 682, 685, 587 P.2d 823, 826 (1978) ("Lien statutes operate *in rem*, and therefore there must be a *res* to which the lien may attach." (citation

omitted)); 7A C.J.S. *Attorney & Client* § 541 (2017). As such, absent a favorable pecuniary result for the client, the requisite attachment cannot occur. But once the lien attaches to the res, attachment "can not be affected by any settlement between the parties before or after judgment." I.C. § 3-205. Section 3-205 thus sweeps broadly "to allow the attorney an interest in the fruits of his skill and labors." *Skelton*, 102 Idaho at 75, 625 P.2d at 1078.

In this case, applying section 3-205's plain terms to Clark's allegations shows that lien creation and attachment both occurred. Lien creation occurred when Clark filed a complaint on behalf of the *Forbush* plaintiffs. *See* I.C. § 3-205. And the lien attached to a res when the *Forbush* plaintiffs obtained a favorable settlement. *See id.* But because the lien's creation and attachment do not, ipso facto, make the lien enforceable, our inquiry does not end here. Indeed, we have emphatically rejected that an attorney "may claim any sum in fees without the necessity of proving the reasonableness of such fees in an adjudicative process." *Frazee*, 104 Idaho at 465, 660 P.2d at 930. To the contrary, this Court explained, "The equitable source of the claimed charging lien necessitates that an attorney take affirmative steps in an adjudicative process to perfect[1] and reduce his lien to a judgment or order of the court." *Id*. at 466, 660 P.2d at 931. Put another way, without undertaking appropriate proceedings to foreclose the lien, an attorney is not entitled to collect on the lien. While lien creation and attachment occurred in this case, the inquiry still remains whether Clark adequately alleged a claim in tort for "failing to protect his lien" or to enforce his lien against Jones Gledhill.

We first address Clark's fatally flawed attempt to plead a tort claim against Jones Gledhill for "failing to protect his lien." More specifically, Clark contends Jones Gledhill is liable for "damages of at least $500,000.00" because Clark was not listed as a payee on the settlement check. We observe, at the outset, that Clark has not presented any authority or legal argument in support of his assertions that: (1) he was entitled to be listed as a payee on the settlement check; (2) Jones Gledhill is liable for the insurance company's failure to list Clark as a payee on the settlement check; and (3) delivering the settlement check to Spence created any liability on behalf of Jones Gledhill. These shortcomings notwithstanding, we construe Clark's complaint as attempting to use section 3-205 as a vehicle to impose tort liability in a suit for damages flowing from an alleged breach to protect his claimed charging lien.

---

[1] *Frazee* used the term "perfect" to refer to the requirement of foreclosure. Because we find *Frazee*'s choice of terminology inartful in this regard, we employ the terms "foreclose" or "enforce" for clarity.

6

It is clear that section 3-205 does not expressly authorize such a cause of action, given that the statute's plain, unambiguous terms do not confer it. Our precedent instructs, however, that we may nevertheless recognize an implied tort cause of action in certain circumstances:

> When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and *needed to assure the effectiveness of the provision*, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.

*Yoakum v. Hartford Fire Ins. Co.*, 129 Idaho 171, 176, 923 P.2d 416, 421 (1996) (quoting Restatement (Second) of Torts § 874A (1979)).

Our dispositive conclusion with regard to this inquiry is that an implied tort cause of action under section 3-205 is not needed to ensure the effectiveness of the statute. The statute authorizes a lien in favor of attorneys, an erudite class fully equipped to secure payment for their services by means other than resorting to vindicating an implied tort claim under section 3-205. We therefore decline to recognize an implied tort cause of action under section 3-205, a conclusion in keeping with other areas of lien law. *See, e.g.*, *Montane Res. Assocs. v. Greene*, 132 Idaho 458, 461, 974 P.2d 510, 513 (1999) ("The Idaho loggers' lien statutes under Title 45, Chapter 4 of the Idaho Code make no provision for personal liability. Foreclosure of a loggers' lien is an *in rem* action under I.C. § 45-412."); *Pierson v. Sewell*, 97 Idaho 38, 44, 539 P.2d 590, 596 (1975) ("Lien foreclosures under I.C. § 45-501 et seq. are strictly actions in rem and are not in personam proceedings: 'The lien statute operates in rem, and not in personam. It creates no personal charge against the owner of the property, but rather a charge against the property to the extent of its value.' " (citations omitted)); *Chamberlain v. City of Lewiston*, 23 Idaho 154, 164, 129 P. 1069, 1071 (1912) ("The lien statute operates in rem, and not in personam; it creates no personal charge against the owner of the property, but rather a charge against the property to the extent of its value."); *Blackwell v. Village of Coeur d'Alene*, 13 Idaho 357, 370–71, 90 P. 353, 357 (1907) (explaining that (1) certain lienholder "may proceed in the ordinary way to foreclose his lien through the district court in the same manner as he would foreclose any other mortgage or lien"; and (2) "the claim and lien is a charge in rem only, and enforceable against the property, but not against the person").

That we decline to recognize an implied tort cause of action under section 3-205 is not to say, however, that an attorney is precluded from bringing appropriate common law torts, such as

conversion. In fact, Clark's complaint specifically referenced conversion, alleging that "[t]he Spence Firm and/or the *Forbush* Plaintiffs converted Clark's fees." He did not allege Jones Gledhill, whose liability is at stake here, converted his fees. Nor could he so allege.

"A claim of conversion requires proof of three elements: '(1) that the charged party wrongfully gained dominion of property; (2) that property is owned or possessed by plaintiff at the time of possession; and (3) the property in question is personal property.' " *Sallaz v. Rice*, 161 Idaho 223, 226, 384 P.3d 987, 990 (2016) (quoting *Taylor v. McNichols*, 149 Idaho 826, 846, 243 P.3d 642, 662 (2010)). This Court has previously recognized that, when a party wrongfully impairs or impedes an attorney's charging lien, the attorney has a claim for conversion. In *Hansbrough v. D.W. Standrod & Co. (Hansbrough I)*, 43 Idaho 119, 125, 128, 249 P. 897, 898–900 (1926), attorney Hansbrough properly foreclosed his attorney lien, making it enforceable by obtaining a judgment that secured the lien against certain securities thought to be in the possession of Hansbrough's client, D.W. Standrod & Co. (the Bank). But after Hansbrough foreclosed his charging lien, it became clear that the Bank had in fact previously transferred the securities securing Hansbrough's charging lien to the Federal Reserve Bank in order to secure the Bank's own notes. *Hansbrough v. D.W. Standrod & Co. (Hansbrough II)*, 49 Idaho 216, 223–24, 286 P. 923, 925 (1930). The Federal Reserve Bank accepted the securities and then sold them to a third-party purchaser, despite Hansbrough having notified the Federal Reserve Bank of his lien. *Id.* Hansbrough thus sued the Federal Reserve Bank for the "alleged conversion of the stock" securing his lien. *Id.* The district court entered judgment in Hansbrough's favor. *Id.* On appeal, the Federal Reserve Bank argued Hansbrough had no claim for conversion because Hansbrough was not entitled to possession of the securities. *Id.* at 225, 286 P. at 925. This Court disagreed and explained:

> [I]t is well settled that where one has a lien on property injured, he may maintain an action for damages where the injuries complained of diminish the value of his security or operate to make it ineffectual, although he has neither the possession nor the right to possession. And it seems clear that a sale of property in derogation of the rights of a lienholder, or an appropriation of the property to one's own use, is an injury within the meaning of this rule.

*Id.* (citations omitted). The Federal Reserve Bank further argued Hansbrough's conversion claim failed because it had accepted the securities without notice of Hansbrough's charging lien. *Id.* at 225–26, 286 P. at 925–26. This Court rejected that argument, reasoning instead that "an attorneys' lien is entitled to as much protection as any other lien having a similar status" and

concluding that the Federal Reserve Bank was not a bona-fide purchaser who took the securities free of Hansbrough's lien because it had accepted the securities to secure an antecedent debt. *Id.* at 226, 286 P. at 925–26. Accordingly, this Court concluded that Hansbrough's charging lien was enforceable in the securities in the hands of the Federal Reserve Bank. *Id.* at 228, 286 P. at 926. This Court further concluded that, because Hansbrough had notified the Federal Reserve Bank of his charging lien before it sold the securities, conversion occurred when the Federal Reserve Bank sold the securities to the third-party purchaser "and appropriated the proceeds to its own use." *Id.*

Here, Clark cannot state a claim for conversion against Jones Gledhill. Unlike the Federal Reserve Bank in *Hansbrough II*, Jones Gledhill did nothing in the way of appropriating the settlement proceeds to its own use. Rather, Clark alleged that Jones Gledhill merely "delivered the settlement check to the Spence Firm." But Jones Gledhill's delivery of the settlement check to Spence did not impair or impede Clark's lien in any way. In fact, Spence notified Clark before he filed this lawsuit that it was holding the disputed portion of the settlement proceeds in trust until the issue of Clark's fees could be resolved. Under *Hansbrough II*, Clark's claimed lien remained attached to the actual proceeds the settlement check represented, despite its delivery to Spence.

Clark's potential conversion claim suffers from at least one more fatal defect. As noted, the second element of conversion requires that the property be "owned *or* possessed by plaintiff . . . ." *Sallaz*, 161 Idaho at 226, 384 P.3d at 990 (2016) (quoting *Taylor*, 149 Idaho at 846, 243 P.3d at 662 (emphasis added)). As we instructed in *Hansbrough II*, a valid claim for conversion may be pled "although [an attorney] has neither the possession nor the right to possession." 49 Idaho at 225, 286 P. at 925. Thus, absent possession or the right to possession, a valid conversion claim requires a showing of ownership. *Sallaz*, 161 Idaho at 226, 384 P.3d at 990 (2016) (quoting *Taylor*, 149 Idaho at 846, 243 P.3d at 662). Here, the allegations of Clark's complaint set forth above show that he was never in possession of the settlement proceeds. While possession is not dispositive, Clark's allegations further demonstrate that he lacked the right to possession of and an ownership interest in the settlement proceeds. Clark's complaint is premised on his anomalous position that Jones Gledhill is liable for Clark's attorney fees, which equate to "damages of at least $500,000.00," absent adjudicating the amount and proving reasonableness of the fees. Yet, we have emphatically rejected the position Clark asserts, which

9

is that an attorney "may claim any sum in fees without the necessity of proving the reasonableness of such fees in an adjudicative process." *Frazee*, 104 Idaho at 465, 660 P.2d at 930. Until Clark properly forecloses his lien on the settlement proceeds by adjudicating it and reducing it to a judgment or court order, he cannot demonstrate a right to possession of or an ownership interest in the settlement proceeds. 51 Am. Jur. 2d *Liens* § 2 (2017) ("[A] lien right alone does not give the lienholder right and title to property; instead, title, which constitutes the legal right to control and dispose of property, remains with the property owner until the lien is enforced through foreclosure proceedings."). But Clark has not. As a result, to the extent Clark's complaint attempted to plead a tort claim for "failing to protect his lien," it failed to state a claim for relief.

We turn next to Clark's attempt to enforce his lien against Jones Gledhill, which inquires of lien foreclosure proceedings.[2] As recognized above, section 3-205 sweeps broadly in terms of lien creation and attachment. But "[t]he statute does not outline the procedure for its enforcement." *Renfro v. Nixon*, 55 Idaho 532, 45 P.2d 595, 596 (1935), *overruled on other grounds by Frazee*, 104 Idaho at 465, 660 P.2d at 930. "[I]t is obvious, however, that the Legislature did not mean to leave the attorney without a remedy or means of enforcing his lien which can only be discharged by payment." *Id.* The absence of a method to foreclose the lien would serve only to undermine "the intent of the law on this point," which is to secure the attorney's right to "recover against sums which his efforts have brought forth." *Skelton*, 102 Idaho at 75, 625 P.2d at 1078. As such, we take up lien foreclosure by reviewing two key cases in chronological order.

The first case is *Skelton*, where this Court affirmed the district court's judgment that granted a charging lien under section 3-205 in favor of a law firm, Rigby & Thatcher. *Id.* at 77, 625 P.2d at 1080. A client, Spencer, retained Rigby & Thatcher to represent her in several matters related to her deceased husband's estate. *Id.* at 70–71, 625 P.2d at 1073–74. One of the

---

[2] We acknowledge that Clark seeks to impose tort liability under section 3-205 on Jones Gledhill. However, as reasoned above, section 3-205 does not authorize such liability, whether in an action for lien foreclosure or otherwise, which is consistent with other areas of lien law. *See, e.g.*, *Greene*, 132 Idaho at 461–62, 974 P.2d at 513–14; *Pierson*, 97 Idaho at 44, 539 P.2d at 596; *Chamberlain*, 23 Idaho at 164, 129 P. at 1071; *Blackwell*, 13 Idaho at 371, 90 P. at 357. Adhering to Rule 12(b)(6)'s command of construing all reasonable inferences in Clark's favor as the non-moving party, we recognize that Clark may have attempted to also plead a tort claim against Jones Gledhill, and had Clark been successful in that claim, it would have resulted in Jones Gledhill's tort liability. Our analysis proceeds on this conclusion, although we emphasize that section 3-205 cannot be used as a vehicle to impose tort liability.

matters resulted in a settlement, which had the effect of resolving the other matters. *Id.* at 71, 625 P.2d at 1074. That settlement notwithstanding, Spencer failed to pay Rigby & Thatcher for its services and further failed to perform the requirements of the settlement. *Id.* Accordingly, an action seeking specific performance of the settlement was filed against Spencer. *Id.* In that action, Rigby & Thatcher filed a notice of claim of lien under section 3-205, seeking payment of its attorney fees. *Id.* at 72, 625 P.2d at 1075. Rigby & Thatcher also filed notices of claims of lien in two other actions involving Spencer. *Id.* When the settlement funds were eventually deposited with the court overseeing the specific performance litigation, Rigby & Thatcher filed a petition in that court to foreclose its claimed lien against the deposited settlement funds. *Id.* Spencer responded with arguments that Rigby & Thatcher needed to file a separate action to foreclose its claimed lien, and that she was entitled to a jury trial. *Id.* Those arguments proved unsuccessful, and the court overseeing the specific performance litigation adjudicated foreclosure of the lien and entered judgment for an amount certain in favor of Rigby & Thatcher. *Id.* at 72–73, 625 P.2d at 1075–76.

When *Skelton* came before us on appeal, this Court affirmed. We first noted, "At the outset, we find that the attorneys could seek to enforce their lien by petition in case no. 20500 as opposed to maintaining an independent action." *Id.* at 73, 625 P.2d at 1076. We then clarified that a lien created by section 3-205 can be foreclosed by proceedings in the original action or by an independent action, explaining that "[b]oth methods of enforcement, the independent action and the petitioning within the original action, are legitimate courses for attorneys to take in seeking satisfaction upon their statutorily granted liens." *Id.* In fact, we clarified that "[a] petition in any of the three causes after proper notice having been given would have been sufficient to raise the question of enforcement of the attorney's lien for the services performed for [the client]." *Id.* at 75, 625 P.2d at 1078. And, as an equitable procedure, no jury need be empaneled; rather, lien foreclosure is appropriately tried to the court. *Id.* at 76, 625 P.2d at 1079. Having determined that foreclosure of the lien was properly adjudicated in *Skelton*, this Court affirmed. *Id.* at 76–77, 625 P.2d at 1079–80.

The second case is *Frazee*, 104 Idaho 463, 660 P.2d 928, which this Court decided two years after *Skelton*. In *Frazee*, Reeves, an attorney, represented Elaine Frazee against her husband, Kenneth Frazee, in a divorce. *Id.* at 464, 660 P.2d at 929. The divorce decree required

Kenneth to pay Elaine $3,000 in six installments. *Id.* Reeves accrued $2,080 in attorney fees while representing Elaine, but Elaine failed to pay the fees. *Id.* As such,

> On January 7, 1980, Reeves filed a notice of attorney's lien in the [underlying divorce] action in the amount of $2,080. He also filed a motion to foreclose that lien, supported by an affidavit stating merely that he had billed his client, Elaine Frazee, for services in the sum of $2,080, that the bill had not been paid, and that Kenneth Frazee had also refused to pay such sum to Reeves. Following additional proceedings, Kenneth Frazee tendered the $1,000, plus interest, which the judgment had required him to pay to Reeves, and that tender was accepted by Reeves. The magistrate court ultimately denied Reeves' claim of lien for $2,080 against Kenneth Frazee, which order was appealed to the district court and affirmed except for the sum of $300, which remained owing from Kenneth Frazee to Elaine Frazee at the time Reeves filed his notice of lien. Reeves appeals here from the order denying his claim of lien against Kenneth Frazee.

*Id.*

Reeves's appeal was problematic for several reasons. For starters, Reeves failed to properly foreclose his claimed lien. *Id.* at 465, 660 P.2d at 930. As this Court explained, "the record here indicates that Reeves merely sent a bill to his client, and that when such bill was not paid, Reeves attempted collection thereof from the opposing party[.]" *Id.* Were Reeves's position accepted, this Court would have enabled Reeves to "claim any sum in fees without the necessity of proving the reasonableness of such fees in an adjudicative process and that he may then levy against the property of the opposing party, who is a total stranger to the contract under which Reeves claims money." *Id.* Moreover, Kenneth had no notice of Reeves's claimed lien until after Kenneth's obligation to pay the six monthly installments had run and the installments had nearly been fully paid to Elaine, as required under the "literal language of th[e] decree drafted by Reeves." *Id.* at 466, 660 P.2d at 931. As a result, "no . . . 'fund' existed, since the moneys had already been paid to the client." *Id.* This Court thus "declin[ed] to so interpret the attorney's charging lien statute," *id.* at 465, 660 P.2d at 930, and summarized its relevant concerns as follows:

> Although we recognize the common problems faced by attorneys in collecting their well deserved fees, the reasons for our hesitancy are apparent. The result of our approving the practice would allow members of the Bar to cloud title to real property with 'claims of attorney lien' without resort to any adjudication of such claims. The potential for economic coercion by attorneys is obvious . . . .

*Id.* at 465–66, 660 P.2d at 930–31 (quoting *Ross v. Scannell*, 647 P.2d 1004, 1008–09 (Wash. 1982)).

12

Consistent with *Skelton*, this Court in *Frazee* instructed that the lien must be foreclosed by taking affirmative steps in an adjudicative process, due to the lien's equitable source. *Id.* at 466, 660 P.2d at 931. Reeves failed to follow that procedure. *See id.* Instead, after Kenneth had paid the sum to Elaine, Reeves merely sought a writ of execution against Kenneth "without any opportunity for Frazee to challenge the amount or propriety thereof." *Id.* Accordingly, Reeves did not have a claim against Kenneth. *Id.*

In this case, the district court found Clark had failed to foreclose his claimed charging lien. As the district court explained, Clark failed to take "some affirmative adjudicatory action" to foreclose his claimed lien. The district court further explained that the amount of fees allegedly owed was not "reduced to an amount certain," nor did it take "the form of a court order or judgment, which would have then been applicable to the parties and their counsel." Jones Gledhill contends the district court's reasoning is correct.

Clark, by contrast, contends it is irrelevant that he did not take an affirmative step to foreclose his lien. Clark supports this argument with what he maintains is a critical distinction between *Skelton* and *Frazee*: the existence of a fund. According to Clark, if a fund exists, it is not necessary to take any "affirmative judicial action" to foreclose a charging lien under section 3-205. As Clark elaborates in his opening brief:

> In *Frazee*, the Supreme Court found that an attorney charging lien did not attach until the party claiming the lien took "some affirmative act . . . in reducing it to a judgment or order of the court." However, as the Supreme Court noted in that case, *Frazee* did not apply to overrule *Skelton v. Spence* [sic]. "We note the difference in the instant case from the situation in [*Skelton*]. There a "fund" was in existen [sic]." *Frazee v. Frazee*. The "fund" vs. "no fund" situation is a key distinction when interpreting and applying the lien statute that the District Court disregarded below. If there is a fund, then the attorney lien statute applies. If there is no fund arising from the attorney's efforts, as in the *Frazee* situation, then no lien attaches until it is "perfected" through some judicial proceeding.

(citations omitted).

Based on our discussion above, we disagree with Clark's reading of *Skelton* and *Frazee*. Clark erroneously conflates the lien's attachment with the lien's foreclosure. However, we recognize that confusion surrounding the enforcement of charging liens under section 3-205 has emerged in the wake of *Skelton* and *Frazee*. *See, e.g.*, *In re Harris*, 258 B.R. 8, 14 (Bankr. D. Idaho 2000) ("While it is not entirely clear what sort of adjudicative process *Frazee* requires, Counsel has submitted to no such process in this case."); *In re Goldberg*, 235 B.R. 476, 484

13

(Bankr. D. Idaho 1999) ("Nothing [in *Frazee*] specifies how the client is to be notified of or afforded an opportunity to contest the attempt by his own lawyer to assert a creditor's lien—an effort which at a minimum raises conflict of interest concerns."); *In re Secaur*, 83 I.B.C.R. 175, 177 (Bankr. D. Idaho 1983) (noting the existence of uncertainty after *Skelton* and *Frazee*); *In re Dearborn Constr., Inc.*, No. 02-00508, 2002 WL 31941458, at \*5 (Bankr. D. Idaho Dec. 20, 2002) ("Idaho cases provide little if any guidance as to how this 'passive' lien is to be enforced or how such a lien holder exercises its rights."). This confusion may partly be because, while *Skelton* and *Frazee* instructed that foreclosure requires affirmative steps in an adjudicative process, neither case distilled our precedent and cogently catalogued these affirmative steps. *See Skelton*, 102 Idaho at 73, 76, 625 P.2d at 1076, 1079; *Frazee*, 104 Idaho at 466, 660 P.2d at 931. This confusion may also partly be because section 3-205, which is silent on enforcement, was enacted in 1911 and has never been amended in the century it has been in effect.

Given this confusion, we will entertain Clark's argument. *Cf. Bradshaw v. State*, 120 Idaho 429, 432, 816 P.2d 986, 989 (1991) ("Accordingly, we will address this issue for future direction and guidance although it is technically moot in this instant action."). Clark cites to the final paragraph of the *Frazee* decision to support this argument. There, we observed that a fund existed in *Skelton*, whereas in *Frazee*, "no such 'fund' existed, since the moneys had already been paid to the client." *Frazee*, 104 Idaho at 466, 660 P.2d at 931. As noted, in *Skelton*, the fund consisted of the moneys from the settlement that were deposited with the court overseeing the specific performance litigation, which was the same forum where the charging lien was foreclosed. 102 at 72, 625 P.2d at 1075. In light of the fund, *Skelton* cited to the Commonwealth Court of Pennsylvania for lien foreclosure criteria involving a fund. *Id.* at 76, 625 P.2d at 1079. *Skelton* acknowledged that this Court had "never specified the requisites for enforcement of a charging lien in such a manner," but included the following criteria as guidance for that case:

> (1) (T)hat there is a fund in court or otherwise available for distribution on equitable principles, (2) that the services of the attorney operated substantially or primarily to secure the fund out of which he seeks to be paid, (3) that it was agreed that counsel look to the fund rather than the client for his compensation, (4) that the lien claimed is limited to costs, fees or other disbursements incurred in the litigation by which the fund was raised and (5) that there are equitable considerations which necessitate the recognition and application of the charging lien.

*Id.* (quoting *Almi, Inc. v. Dick Corp.*, 375 A.2d 1343, 1346 (Pa. Commw. Ct. 1977)). Though the plain terms of section 3-205 do not confer these criteria because it does not specify how the lien

14

is to be foreclosed, we recognize that these criteria were helpful in *Skelton* and may be instructive in factually relevant cases, but they do not constitute absolute requirements that govern the enforcement of a charging lien under section 3-205. These criteria, taken from Pennsylvania, are the product of a charging lien recognized under common law, not under a statute. *See Recht v. Urban Redev. Auth. of City of Clairton*, 168 A.2d 134, 136–39 (Pa. 1961). In any event, while these criteria may be instructive in appropriate cases, they do not assist Clark in this case. For one, even though these criteria were set forth in *Skelton*, *Skelton* was clear that the lien must be foreclosed in an adjudicative process. 102 Idaho at 73, 76, 625 P.2d at 1076, 1079. But Clark took no affirmative step to foreclose his lien and reduce it to a judgment or court order. Moreover, the only *Skelton* criterion Clark even remotely addresses in his opening brief is the existence of a fund, but he does so only in passing. It is clear from Clark's complaint that Jones Gledhill was not in possession of a fund in this case because, before Clark filed this lawsuit, the settlement check had already been forwarded to Spence on behalf of the *Forbush* plaintiffs. As Clark specifically alleged in his complaint, Jones Gledhill "provided the . . . settlement funds to the Spence Firm without protecting Clark's lien." *Cf. Frazee*, 104 Idaho at 466, 660 P.2d at 931 (stating that no fund existed "since the moneys had already been paid to the client"). Neither the settlement check nor the actual settlement proceeds will return to Jones Gledhill. Clark's reliance on *Skelton* is misplaced.

To eliminate any lingering confusion, we take this opportunity to distill our precedent and provide concrete foreclosure guidance. As one route to foreclosing a charging lien under section 3-205, an attorney who claims a lien may intervene in the proceeding and file a complaint for lien foreclosure with the court overseeing the underlying litigation, or with the court where relevant proceeds—*i.e.*, the res—have been deposited. *See Skelton*, 102 Idaho at 72–73, 625 P.2d at 1075–76. The complaint for lien foreclosure may be filed in those courts even if a settlement has already been reached, so long as a party or the court in those cases has possession or control of the proceeds, *Frazee*, 104 Idaho at 466, 660 P.2d at 931, as section 3-205 is clear that a charging lien "can not be affected by any settlement . . . before or after judgment." *Accord* Stuart M. Speiser, *Attorneys' Fees* § 16:1 (1973). The court may then conduct proceedings ancillary to the underlying litigation to foreclose the lien and, if valid, reduce it to a judgment or court order. *See Frazee*, 104 Idaho at 466, 660 P.2d at 931; *Skelton*, 102 Idaho at 72–73, 625 P.3d at 1075– 76. As an equitable procedure, a court, not a jury, adjudicates foreclosure of the charging lien.

*Frazee*, 104 Idaho at 466, 660 P.2d at 931; *Skelton*, 102 Idaho at 76, 625 P.3d at 1079. Alternatively, an attorney who claims a charging lien may commence a separate action to reduce the lien to a judgment or court order by filing a complaint for lien foreclosure. *See Frazee*, 104 Idaho at 464, 660 P.2d at 929; *Skelton*, 102 Idaho at 73, 625 P.3d at 1076; *accord* Speiser, *supra* § 16:1. Whether filed in the underlying litigation or a separate action, the complaint for lien foreclosure must be served on all relevant counsel and parties and summarize the relevant fee agreement, identify the nature of the lien and its creation and attachment, describe the attorney's work performed and any results obtained, state the underlying case's procedural posture, and set forth a sworn estimate of the amount of the lien.[3] Before the lien may be reduced to a judgment or court order, the court must find by a preponderance of the evidence that the attorney's work produced the res and that the claimed fees are reasonable. In the event the court finds that an attorney's assertion of a lien is frivolous, the court may, in an exercise of discretion, award attorney fees to any party required to defend against the lien under Idaho Code section 12-123 if the award is appropriate.

In summary, the lien must first be created by an attorney's "commencement of an action, or the service of an answer containing a counterclaim." I.C. § 3-205. The lien must next attach to "a verdict, report, decision or judgment in his client's favor and the proceeds thereof," *i.e.*, the res. *Id.* Finally, after creation and attachment occur, the lien must be foreclosed by taking the above-discussed affirmative steps in an adjudicative process. *Frazee*, 104 Idaho at 466, 660 P.2d at 931; *accord Skelton*, 102 Idaho at 73, 76, 625 P.2d at 1076, 1079.

In this case, Clark's complaint is clear that, while lien creation and attachment occurred, foreclosure did not. Clark took no affirmative step to reduce his lien to a judgment or court order before the settlement proceeds were delivered to Spence. Clark merely sent a letter to Jones Gledhill claiming an uncertain amount of a lien and filed the instant action seeking to hold Jones Gledhill liable in tort, alleging that Jones Gledhill "owed Clark a duty to protect his lien" but had nonetheless "fail[ed] to protect his lien." To the extent Clark's complaint attempted to allege a claim to enforce his lien against Jones Gledhill, it failed to state a claim for relief.

---

[3] In addition, these requirements ensure the lien comports with due process. *See Dragotoiu v. Dragotoiu*, 133 Idaho 644, 648, 991 P.2d 369, 373 (Ct. App. 1998) ("When seeking enforcement of an attorney's lien, due process must be afforded. The right to procedural due process . . . requires that a person . . . be given meaningful notice and a meaningful opportunity to be heard." (citation omitted)).

No matter how Clark's complaint is construed, it fails to state a claim for relief. Consequently, the district court's order granting Jones Gledhill's motion to dismiss under Rule 12(b)(6) is affirmed.[4]

**B.      The district court did not abuse its discretion by awarding attorney fees under Idaho Code section 12-121 to Jones Gledhill.**

"The awarding of attorney fees and costs is within the discretion of the trial court and subject to review for an abuse of discretion." *Kosmann v. Gilbride*, 161 Idaho 363, 366, 386 P.3d 504, 507 (2016) (quoting *Smith v. Mitton*, 140 Idaho 893, 897, 104 P.3d 367, 371 (2004)). To determine whether the district court abused its discretion, this Court examines whether the district court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion and consistently with relevant legal standards; and (3) reached its decision by an exercise of reason. *Swallow v. Emergency Med. of Idaho, P.A.*, 138 Idaho 589, 592, 67 P.3d 68, 71 (2003).

We conclude the district court's award of attorney fees under section 12-121 to Jones Gledhill signifies a proper exercise of discretion. The district court recognized that it had discretion to award fees. Further, the district court acted within the boundaries of its discretion and consistently with relevant legal standards. In that regard, the district court accurately recited the governing law and recognized that it was tasked to find whether Clark pursued the case frivolously, unreasonably, or without foundation. Finally, the district court reached its decision by an exercise of reason. The district court explained that Clark "did not argue a new or novel interpretation of Idaho Code § 3-205, nor argue that the law should be extended or modified. [Clark's] 'novel legal question' merely argued that the Court should ignore established precedent, which it has declined to do." Additionally, the district court noted that Clark "took action that increased the cost of litigation by filing documents that were under seal in another case . . . ." Although Clark contends the district court's "myopic focus on the holding in *Frazee*" was erroneous, we disagree. As reasoned above, Clark's attempt to distinguish *Skelton* from *Frazee* is not grounded in a reasonable interpretation of either opinion. Clark simply ignored a

---

[4] Jones Gledhill asserts the litigation privilege bars Clark's lien claim. Because the district court never reached this argument, we decline to address it. *Krinitt v. Idaho Dep't of Fish & Game*, 159 Idaho 125, 131, 357 P.3d 850, 856 (2015) ("Even though an issue was argued to the court, to preserve an issue for appeal there must be a ruling by the court." (quoting *Saint Alphonsus Diversified Care, Inc. v. MRI Assocs., LLP*, 148 Idaho 479, 491, 224 P.3d 1068, 1080 (2009))). Additionally, based on the reasoning above, this argument need not be reached because it has no potential to impact Jones Gledhill's substantial rights. *See* I.R.C.P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

17

key aspect of both *Skelton* and *Frazee* by arguing he was not required to foreclose his lien. *Frazee*, 104 Idaho at 466, 660 P.2d at 931; *Skelton*, 102 Idaho at 73, 76, 625 P.2d at 1076, 1079.

Even though the district court found Clark had pursued the case frivolously, unreasonably, and without foundation, it ultimately declined to award the full amount of Jones Gledhill's requested fees. Jones Gledhill requested $35,416.50 in fees. The district court, however, reasoned that "the amount claimed appears excessive and unreasonable considering the lack of novelty or difficulty of the issues and what would normally be a reasonable amount of time and labor required on the issues presented." The district court thus awarded $26,250.00 in fees. These findings, which are supported by the record, signify that the district court's award of attorney fees to Jones Gledhill was a proper exercise of discretion. We therefore affirm the award of attorney fees to Jones Gledhill.

**C.      We decline to reach whether the district court abused its discretion by sealing certain documents and denying Clark's motion to amend.**

Clark has waived the issues of whether the district court abused its discretion by sealing certain documents and denying Clark's motion to amend. As to sealing documents, Clark fails to explain how this issue affects his substantial rights. I.R.C.P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."). As to the motion to amend, Clark did not list it as an issue on appeal in his opening brief. *Rowley v. Fuhrman*, 133 Idaho 105, 108, 982 P.2d 940, 943 (1999) (explaining that party waived issue by not listing it as an issue on appeal in the opening brief); *see also* I.A.R. 35(a)(4). Since these issues are waived, we decline to address them.

**D.      We award Jones Gledhill attorney fees on appeal.**

Both parties seek attorney fees and costs on appeal under Idaho Code section 12-121. This Court has explained it will award attorney fees under section 12-121 to the prevailing party only "if the action was pursued, defended, or brought frivolously, unreasonably, or without foundation." *Idaho Military Historical Soc'y, Inc. v. Maslen*, 156 Idaho 624, 633, 329 P.3d 1072, 1081 (2014) (internal quotation marks omitted). "Such circumstances exist when an appellant has only asked the appellate court to second-guess the trial court by reweighing the evidence or has failed to show that the district court incorrectly applied well-established law." *Snider v. Arnold*, 153 Idaho 641, 645–46, 289 P.3d 43, 47–48 (2012). Conversely, fees will generally not be awarded when good faith arguments are made on appeal. *Id.* at 646, 289 P.3d at 48.

Based on the above, Jones Gledhill is the prevailing party on appeal, and we conclude Jones Gledhill is entitled to an award of attorney fees on appeal under section 12-121. Clark unequivocally failed to provide authority or legal argument in support of his assertions that: (1) he was entitled to be listed as a payee on the settlement check; (2) Jones Gledhill is liable for the insurance company's failure to list Clark as a payee on the settlement check; and (3) delivering the settlement check to Spence created any liability on behalf of Jones Gledhill. Clark further failed to show that the district court incorrectly applied well-established law. Nor has Clark even made any argument that this Court should overrule the well-established law that forecloses Clark's complaint; instead, Clark continued making the same unreasonable arguments on appeal that he made to the district court. Thus, we award Jones Gledhill attorney fees on appeal under section 12-121.

## IV. CONCLUSION

We affirm the dismissal of Clark's complaint, sealing of certain documents, denial of Clark's motion to amend, and award of attorney fees to Jones Gledhill. We award attorney fees and costs on appeal to Jones Gledhill.

Justices HORTON, BRODY and Justices EISMANN and TROUT, Pro Tems, **CONCUR.**